JACKSON, ex dem. Bear, *vs.* IRWIN.

A *surrogate* obtains jurisdiction in reference to the sale of the real estate of a testator or intestate, by the presentation of a *petition* by executors or administrators praying his aid, and by the exhibition of an *account* of the personal estate and debts of the deceased.

It is no objection to an order of sale, that the surrogate directs a village plot to be sold, without prescribing it to be sold in lots or parcels; under such order, administrators may and should sell by parcels.

Sales under surrogates' orders, in pursuance of the [act of 1801, might be either *public* or *private*, in the discretion of the executors or administrators obtaining the orders.

An administrator's deed, executed *subsequent* to the act of 1813, which requires sales to be at *public vendue* and on *notice*, if executed by virtue of an order granted under the act of 1801 is *valid*, although the premises conveyed were sold at private sale and without public notice.

An order giving authority to *lease* real estate is not a revocation of a previous order conferring power to *sell*; such powers may well exist together.

Evidence of abuse of power by administrators is inadmissible to defeat the title of a purchaser under a surrogate's order.

THIS was an action of ejectment, tried at the Seneca circuit in December, 1831, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The lessor of the plaintiff claimed to recover an undivided third of a village lot, called lot No. 19, in or near the village of *Waterloo*. The lot is part of a tract of 100 acres conveyed to the father of the lessor by the surveyor general of the state, by deed bearing date in 1804. The lessor was born in 1807, and in the same year his father died, leaving four children, one of whom died without issue. The defence set up was under an *administrator's deed,* by virtue of a *surrogate's order,* and the defendant accordingly produced, 1. *Letters of Administration* granted by the surrogate of Seneca, bearing date 6th November, 1807, appointing Mary Bear, John Yost and Martin Kendig, jun. administratrix and administrators of all and singular the goods, &c. of Samuel Bear, deceased; 2. An order of the surrogate for the sale of certain of the real estate of the decedent, bearing date 19th April, 1809. In this order, the

surrogate, after *reciting* that upon the petition of the adminis-trators of the decedent, setting forth that his personal estate was insufficient for the payment of his debts, and that they had made a just and true account of his personal estate and debts, as far as they had been able to discover the same, and praying the aid of the surrogate pursuant to the statute in such case made and provided, an order had been made by him on the 2d day of June, 1808, which had been published according to law, directing all persons interested in the estate of the decedent to appear before him, the surrogate, at his office, on the 25th August, 1808, to shew cause, if any they had, why so much of the real estate whereof the decedent died seised should not be sold as would be sufficient to pay his debts, and that no person appeared to shew cause : proceeds to state, that on the day of the date of the order, to wit, 19th April, 1809, the administrators appeared before him, and that he heard the proofs and allegations produced by them, and upon due proof and examination did find and adjudge that the personal estate of the decedent was insufficient for the payment of his debts, and that the administrators had applied such parts of the personal property as had come to their knowledge towards the payment of the debts of the decedent, and that there yet remained due and unpaid the sum of $3733, and the necessary costs and charges attending the application to him in the matter, and therefore he did *order* and *determine* certain lots, pieces or parcels of land (particularly describing them) to be sold, and a deed of conveyance to be executed therefor by the administrators. One of the pieces is described in the order in these words : " Also so much of the hundred acres on lot No. 4, in said town of Fayette, which was conveyed to the said Samuel Bear by Simeon De Witt, surveyor general, as is known and distinguished by the town plot called the village of Jefferson, (except so much of said village as may have been heretofore conveyed by the said Samuel Bear,) whereof the said Samuel Bear died seised."
3. The defendant produced a deed in fee from the administrators of Samuel Bear, deceased, to Ephraim Bear, bearing date 13th May, 1814, reciting the last mentioned order of the surrogate, and by virtue thereof conveying to the grantee lot No.

19, the premises in question, for the consideration of the sum of $40. 4. A deed from Ephraim Bear to William Penyear of the premises in question, bearing date 1st January, 1820, the consideration expressed in which was $200. It was admitted that the defendant held the premises as the tenant of Penyear. The defendant also *offered to prove* by *parol* that the bargain for the sale and purchase of lot No. 19 was negotiated between the administrators and *Ephraim Bear*, their grantee, and the consideration for the conveyance to him paid long anterior to the date of the deed, and previous to the passage of the act of the legislature requiring sales under surrogates' orders to be at public auction ; which evidence was objected to and refused to be received by the judge. The plaintiff then produced and read in evidence an order of the surrogate of Seneca, made on the 25th October, 1810, wherein, after *reciting* that upon the petition of two of the administrators of Samuel Bear, deceased, setting forth that it would be advantageous to the heirs of the decedent to lease the real estate of the decedent, for the payment of his debts which remained unsatisfied by the application of the personal estate and the avails of the sale of a part of the real estate, and that the petitioners had made a just estimate and statement of the sum necessary to be raised to discharge the remainder of said debts, and the time which it would require to raise such sum, and praying the aid of the surrogate ; he states that he proceeded to hear the proofs produced, and upon due proof and examination, did *find* and *adjudge* that the sum of $4000 ought to be raised for the purposes aforesaid, and that it would require the term of 14 years to raise such sum by lease, and thereupon, by virtue of the authority vested in him by an act of the legislature passed 9th March, 1810, authorized the administrators to lease the real estate of the decedent, for the purposes aforesaid, for the term of 14 years from the first day of November then next. The plaintiff next *offered to prove* that *immediately* after the order last mentioned, the administrators proceeded to lease and did lease certain portions of the real estate of the decedent, and raised money thereupon to the amount of $4000 ; which evidence was objected to, and rejected by the judge.

The jury, by the consent of parties, found a verdict for the plaintiff, subject to the opinion of this court.

*J. M'Alister*, for plaintiff. The right of the plaintiff to recover cannot be questioned, unless the defence interposed be sustained ; and it is insisted it should not prevail, 1. Because the sale by the administrators is *void* for the *want of certainty* in the surrogate's order, in the description of the premises to be sold, and in the general power conferred to sell a town plot or village. 2. The sale is *void* for the omission to shew that the premises were sold at *public vendue*. It is true that the act under which the order was made does not require that the property shall be sold at public vendue ; but it is contended that it was always the duty of *trustees*, situated as were the administrators in this case, to dispose of the property entrusted to them at *public sale*, and that the act of 1813, requiring sales to be public, was merely declaratory of the common law. 3. The *order to sell* was revoked, abrogated and superseded by the *order to lease ;* it was then shewn to the surrogate that the sum required to pay the debts of the decedent could be raised by *leasing* the property for a term of years. The surrogate made an order accordingly, and in pursuance of it, the sum required was raised, as the plaintiff offered to prove, and which, for the purpose of this case, must be considered as proved. What right had the administrators, *after* the money was raised, to *sell* the premises in question ? for, allowing that both the powers of *leasing* and *selling* might exist at the same time, after the exercise of the first power, by which the object of the trust was accomplished, the second could not be exercised.

*S. Birdsall*, for defendant. It was not necessary that the sale should have been at public vendue. The order of sale was made in pursuance of the act of 1801, which did not require a public sale ; it was not until the act of 1813 that a sale at auction was directed. Even had the sale in this case taken place *after* the act of 1813 and by virtue of it, the title of the purchaser would not have been affected by the want of conformity in the sale to the provisions of the statute. 1 *R. L.*

451, § 25. If it is deemed essential that the sale should be shewn to have in fact taken place anterior to 1813, the cause should be sent back to give the defendant the opportunity of proving the fact as he offered, but was not permitted to do ; it is supposed, however, that the court will presume that the proceedings were had under the act of 1801. The order of sale was sufficiently certain in the description of the premises to be sold. The questions raised as to the abuse of power by the administrators cannot be considered upon the case now presented to the court ; the only inquiry is whether the surrogate had jurisdiction, and that is fully shewn, 8 *Johns. R.* 50; 8 *Cowen*, 178 ; 4 *Wendell*, 436. The order to *lease* did not revoke the power to *sell ;* it recites a sale of part of the real estate, and it may well be intended that the premises in question were a portion of the premises sold ; it did not necessarily revoke the power to sell, as the two powers may well exist together ; and, besides, there is no evidence that any thing was done under the power to lease.

*By the Court,* SAVAGE, Ch. J. The lessor, as one of the heirs at law of S. Bear, deceased, is entitled to recover, unless the heirs have been divested by operation of law. The statute of 1801 gave to the surrogate power to make an order authorizing the executors or administrators to sell and convey the real estates of their testators or intestates, whenever it should be shewn to be necessary for the payment of debts. It has been decided, in *Jackson* v. *Robinson,* 4 *Wendell,* 440, that the suggestion of the administrator by way of petition, accompanied by an account, is sufficient to give the surrogate jurisdiction of the subject matter. Upon due examination of the matter, if the application is well founded, the surrogate was authorized to make an order directing a sale of a part or the whole of the real estate of the deceased ; that the sale should be made and the conveyances executed by the executors or administrators applying for such order ; that the conveyance should set forth the order, and should be valid and effectual against the heirs and devisees of the testator or intestate and all claiming under them. If therefore the proceedings by the administrators in this case have been regular, and the lot in question

has been sold and conveyed according to the directions of the statute, the defendant has the better title. It is proper, therefore, to examine the objections which have been made to the deed.

It is said the deed is void for want of certainty in description in the order of the surrogate. The description is this : " So much of the hundred acres on lot No. 4 as is known and distinguished by the town plot called the village of Jefferson." It seems that a map was referred to, called the town plot, and on that map a portion of a 100 acre lot was laid down as the village of Jefferson. Such a description, I apprehend, is sufficiently definite. Whether it was necessary and proper to order the whole plot of a village to be sold is not a question of inquiry in this cause. If the parties interested had any objection to the order when made, they might have appealed from it to the proper tribunal, and thus have corrected the error, if any. The order of the surrogate authorized a sale of the whole of the village plot not already sold ; it of course authorized a sale of every part, and there is nothing in the order compelling the administrators to sell the whole at once, and to be included in one conveyance ; it would have been indiscreet to do so, but with that we have nothing to do at present. The surrogate had the power ; he has exercised it, and in a manner which was legal. The administrators, therefore, had authority to sell and convey the lot.

It is objected that the lot should have been sold at *public sale*. The statute of 1801, which we have been considering, gives no direction as to the manner in which sales should be made ; they might be at public or private sale, in the discretion of the executors or administrators who were to make the sale. Were it not for the act of 1813, I apprehend that objection would not have the appearance of plausibility. In the revision of that year, the provisions of the act of 1801, relating to the surrogate's powers, are substantially re-enacted, and then follows a new provision, 1 *R. L.* 451, § 25, that no lands or tenements shall be sold by virtue of any such order, unless such sale be at public vendue, specifying the hours between which the sale shall be made, and directing what notice shall be given. If this statute governs in the present case,

the sale must be admitted to be void, as it is not pretended that

it was public, or after notice. But it is contended that the statute of 1813 can have no influence upon this sale ; all statutes are prospective, and prospective only, unless they cannot have full operation and effect without a retrospective construction. The order spoken of in the 25th section is an order obtained under that act ; of course, previous orders, obtained under the act of 1801 are not within its terms, nor is it necessary that they should be construed to be within it ; the 25th section can have a fair and reasonable operation without such construction. The deed from the administrators bears date May 13, 1814, subsequent to the act of 1813 ; but as it was executed by virtue of an order granted under the act of 1801, which did not require either notice of the sale, or a public sale, neither was necessary. I am now supposing that the sale was made in 1814. The defendant offered to prove that the contract was in fact made by parol, and the consideration paid anterior to the act of 1813. This evidence was rejected, but on what ground the case does not inform us ; probably because the judge was of opinion that the administrators were to be governed by the act of 1813. It is true that a sale of lands in contemplation of law is not made, that is completed, until the conveyance is executed ; but if a parol contract was made before 1813, for the sale of the lot in question, had the purchaser paid the consideration and received possession, there can be no doubt that a court of equity would have decreed performance, and compelled the administrators to convey. This consideration raises an additional argument in favor of the conclusion that the sale and conveyance must be under the law of 1801, notwithstanding the intervention of the act of 1813, between the payment of the consideration and bargain, and the actual conveyance. Were it not in the power of the administrators in 1814 to execute a valid conveyance, without reciting notice of a sale at auction, and shewing a sale so made, it will be seen that in the case supposed no conveyance could be executed ; the sale could not be completed ; the purchaser could not receive a title, and possibly must lose the consideration paid. Neither of the acts of 1801 or 1813 are limited as to the time within which sales shall be made by

virtue of the orders obtained under them. I am therefore of opinion, upon the facts in the case, without the evidence which was offered and rejected, that the sale and conveyance were legally made to Ephraim Bear.

In 1810 an order was obtained authorizing the administrators to lease property to pay the debts; and it is contended that this order operated as a revocation of the previous order for sale. The order, in its terms, certainly is not a revocation. The power of leasing was not authorized until the year 1810, and therefore could not have been obtained when the order to sell was granted. The act of 1813, which gives the surrogate power to authorize a sale, contains the authority to lease, and for aught I can find, either in the terms of the statute, or in its policy, I can see no impropriety in authorizing the administrators, in their discretion, either to lease, mortgage or sell the property, as they may find it can be most advantageously disposed of. The object is to dispose of the real estate to the best advantage, for the purpose of raising money to pay the debts. So far, then, from the one order operating as a revocation of the other, I apprehend they stand well together.

I think the judge was correct in refusing the evidence to shew the amount raised by leasing. Its only object could be to shew an abuse by the administrators of the powers vested in them. This is not an action calling upon the administrators to give an account of their trust; nor has this court any such power; nor is it a case where the purchaser is bound to see that the money raised by the sale is faithfully applied. There are other tribunals before which the heirs may call the administrators to render an account; but here we are pursuing the legal title, which is vested in E. Bear and his assignees.

The defendant is entitled to judgment.