## REA and others vs. M'EACHRON.

A sale under a *surrogate's order* of the real estate of an intestate is *void*, unless an *order of confirmation* is obtained previous to the conveyance to the purchaser: *So held*, in this case, although it was offered to be proved that the sale was *bona fide*, that a full and fair price was paid by the purchaser, and that the proceeds were applied to the payment of the debts of the intestate.

The remedy of the purchaser is by application to chancery for confirmation.

THIS was an action of ejectment, tried at the Washington circuit in November, 1832, before the Hon. ESEK COWEN, one of the circuit judges.

The plaintiffs claimed the premises in question as the heirs at law of their father, *Samuel Rea*, who, nineteen years previous to the trial, died, seised and possessed of the same. The defendants offered to prove that after the death of *Samuel Rea*, to wit, on the 23d November, 1813, letters of administration, with the will annexed, were in due form of law granted by the surrogate of Washington county to James W. Gillis and Archibald J. Gillis, to administer upon the estate of Rea; that his personal estate proving insufficient to pay his debts, proceedings were had in due form of law before the surrogate, for the sale of his real estate for the purpose of paying such debts, and on the 18th April, 1825, an order was made by the surrogate for the sale of the *premises in question*, and which, on the 9th of July, in the same year, were accordingly sold by the administrators at public auction to A. S. M'Dougall, for the sum of $568,$\frac{79}{100}$, and on the 9th November following a deed, in pursuance of such sale, was executed to the purchaser. It was *admitted* that an order confirming such sale *could not be found* in the surrogate's office, but it was offered

to be proved that the whole sum for which the premises were sold was appropriated by the administrators in good faith, in payment of the debts due from the estate of Rea. It was further offered to be proved that M'Dougall, the purchaser of the premises, subsequent to the sale, sold and conveyed the same to *James W. Gillis*, one of the administrators, and that in December, 1828, Gillis died intestate, and administration upon his estate was granted to his widow, who in due form of law obtained a surrogate's order for the sale of the premises in question in April, 1829, and on the 18th June, 1829, sold the same at public auction to Gideon Safford, jun., for the sum of $500; which sale was on the next day *duly confirmed* by the surrogate, and the premises conveyed to Safford, who, in April, 1832, sold and conveyed the same to the defendant in this cause, who also offered to prove that *possession* of the premises had accompanied the *several sales*. All which evidence was objected to by the plaintiffs, on the sole ground of *want of confirmation* of the sale to M'Dougall, under the first order of the surrogate. The judge sustained the objection, and the jury, under his direction, found a verdict for the plaintiffs. The defendant having excepted to the decision of the judge, now moved for a new trial.

*S. Stevens*, for the defendant, insisted that the surrogate having *jurisdiction* when he made the order of sale under which M'Dougall purchased, and a deed having been duly executed in pursuance of such sale, by virtue of which M'Dougall entered into possession, the title of the heirs was divested and passed to the purchaser. A deed from a master under a decree of chancery is good, although executed previous to a confirmation of his report. 12 *Johns. R.* 528. The purchaser has no concern with the order of confirmation; that is the business of the administrator; it is enough for the purchaser to know that the administrator has authority to sell, and that he is a *bona fide* purchaser. The counsel cited 4 *Wendell*, 436; 10 *id.* 441, and 12 *id.* 533.

*C. L. Allen*, & *D. Russell*, for the plaintiffs. The sale to M'Dougall was wholly *void*, for the want of confirmation.

under the act of 1813, 1 *R. L.* 450, an order of confirmation NEW YORK, was *not* necessary, but the act required that a *discreet person,* May, 1835. to be appointed by the surrogate, should unite with the administrator in the conveyance of the property. By the act of 1819, *Statutes of* 1819, *p.* 214, the law was changed, and an *order of confirmation* by the surrogate became necessary.    This act is incorporated into the revised statutes, 2 *R. S.* 105, § 29, 30, 31, and by those sections and others following them, it is manifest that the legislature considered sales made without an order of confirmation *void,* and accordingly provided a remedy for purchasers.    Such also has been the construction of the chancellor, upon these statutes ; 2 *Paige,* 316, and 3 *id.* 306.    The remedy of the defendant, if he has any, is in Chancery.

*S. Stevens,* in reply. The act of 1819 was a *remedial act,* and should so be construed. Its object was to *confirm* sales under surrogates' orders, not to render them *invalid ;* to guard the interests of the *heirs* by insuring the fairness of the proceedings, and that a *bona fide* price should be paid, when divested of their estate.    Every beneficial object has been answered in this case ; a full and bona fide price has been paid for the land, and the proceeds have been appropriated to the payment of the debts of the intestate. If, from the terms of the act, it might be inferred that the legislature supposed that a sale, without an order of confirmation, was void, he insisted that it was not competent to the legislature thus to pronounce upon the law ; to do so was the province of the judicial department of the government, not the legislative. The direction that the orders of sale and confirmation shall be recited in the deed to the purchaser is as explicitly required by the act of 1819 as that the sale shall be confirmed, and surely it will not be said that the title does not pass to a purchaser by a deed, omitting such recital.    The recital of such orders, as well as the obtaining the order for confirmation, are merely directory to the administrator.    13 *Johns. R.* 97.    1 *Johns. Cases,* 153. 8 *Co.* 191, *Manning's case.*

Rea
v.
M'Eachron.

*By the Court,* SUTHERLAND, J. Previously to 1819, no order of confirmation of such sales, by the surrogate, was required. Under the act of 1813, 1 *R. L.* 451, § 24, the conveyances upon such sales were required to be executed by the executors or administrators, applying for the order, *and such other discreet person or persons* as the surrogate might think proper to appoint ; and the order of sale was to be set forth at large in the deed. On the 12th of April, 1819, *Laws of* 1819, *p.* 214, an act was passed, by the first section of which it was provided, " That wherever a *sale had been made,* by virtue of an order of the court of probate, or of any surrogate, (under the act of 1813,) and a conveyance executed, *wi thout the concurrence of a discreet person, designated for that purpose* in such order, it should be lawful for the purchaser, at such sale, or his representatives, on or before the 1st of January, 1821 to petition the chancellor, setting forth the facts relative to the sale, and praying for an order of reference to a master, to examine and report thereon ; and that upon the coming in of such report, if it appeared to the satisfaction of the chancellor that the sale had been made fairly and bona fide, he should confirm the same, upon such terms as he should deem equitable. A notice of eight weeks in the state paper is required to be given, upon the filing of the master's report, of the intended application for a confirmation thereof. This section, it will be perceived, applies only to sales which had *previously* been made. The third section provides for *future* cases, and enacts, " That on all sales (thereafter) to be made, it shall be the duty of the executors or administrators to make a return of the proceedings had on the order for such sale to the surrogate who issued the same, and the proceedings shall be examined by him; and if it appear that the sale has been legally made, and all the proceedings fairly conducted, he shall issue a further order, *confirming such sale,* and directing conveyances to be executed by the executors or administrators ; and such conveyances shall set forth such orders at large, and shall be valid and effectual against the heirs, and all other persons claiming under them." The right of appeal, which is given by the 32d section of the act of 1813, is expressly extended to this section of the act of 1819. The preamble of this act recites, that it had

been represented to the legislature, that since the passing of the act of 1813, certain sales of real estate had been made by order of certain surrogates, and that through inattention or ignorance, no discreet person or persons had been appointed to join in such sales, or in the conveyances; *whereby the purchasers at such sales may hereafter be evicted and deprived of the lands which they have bona fide purchased.* For remedy whereof, purchasers may petition the chancellor, &c. The 4th section of this act repeals the 24th section of the act of 1813, which required some discreet person to be united with the administrators in the conveyances given under the act. The revised statutes adobt the provisions of the act of 1819, which require the administrators to report to the surrogate, and to obtain an order confirming the sale. 2 *R. S.* 105. They authorize the surrogate, however, to vacate the sale, not only where the proceedings may have been unfair, but also where, in his opinion, the sum bid is disproportionate to the value of the premises, and there is reason to believe that ten per cent. more can be obtained upon another sale. 2 *R. S.* 105, § 29, 30, 31. They also authorize the chancellor to confirm such sales, where no order of confirmation had been regularly obtained before the conveyances were executed, or where no discreet person had united with the executors, in the conveyances, or where they omitted to set out at large the orders directing and confirming such sales. 2 *R. S.* 110, 111, § 61, 2, 3, 4, 5. The 65th section is as follows : " If, upon the hearing of such application, and the examination of the proceedings, it shall appear to the satisfaction of the chancellor, that the said sale was made fairly, and in good faith, he shall make such order for confirming the sale and conveyance, as he *shall deem equitable,* and such sale and conveyance *shall from that time be confirmed and valid,* according to the terms of the order."

It is very obvious, from the preamble to the act of 1819, that the legislature supposed that the omission to unite some discreet person with the executors, in the conveyances given by order of the surrogate under the act of 1813, rendered those conveyances inoperative for the purpose of transferring the legal estate. They were considered as creating an equity in

NEW YORK, favor of the grantee, upon the foundation of which he might
May, 1835. apply to the chancellor to comfirm the sale ; which he was
Rea authorized to do, upon such terms as he should deem equita-
v. ble, if he was satisfied it was made fairly and in good faith.
M'Eachron, Until thus confirmed, it is apparent, not only from the preamble,
but from the general tenor of the act, that the legal estate was
considered as still in the heirs. The application was to be made
by the *grantee to confirm the sale, not by the heirs to set it
aside.* That act dispensed with the necessity of uniting a
third person with the executors in the conveyance, and as a
substitute therefor, made it the duty of the executors to make
a return of their proceedings, upon the order of sale, to the
surrogate, who was to make a further order confirming such
sale, and directing conveyances to be executed by the execu-
tors, if the proceedings were shown to have been fair and le-
gal. This order of confirmation is a much more important
and effectual precaution against fraud, than the uniting a
third person with the executors in the deed to be given by
them ; and if the omission of the latter would render the con-
veyances legally inoperative, the entire neglect to obtain a
confirmation of the sale, and an order that a conveyance be
executed, must produce the same effect. By the omission to
obtain and enter this order, the heirs lose the right of appeal
which is secured to them by the act.

Under the act of 1819, applications to the chancellor to con-
firm such sales were to be made before the 1st of January,
1821. But the provision of the revised statutes is general. It
applies to *antecedent* as well as *subsequent* cases, without lim-
itation as to time ; and it covers the omission to unite some
third person with the executors in the conveyance, as well as
the omission to set forth at large in the conveyance the or-
der of the surrogate directing the sale, and the order confirm-
ing the same. 2 *R. S.* 110, § 61. And the 65th section declares,
that when the chancellor shall make the order for confirming
the sale and conveyance, such sale and conveyance shall *from
that time be confirmed and valid,* according to the terms
of the order. An application was made to the chancellor,
under this act, to confirm a sale under an irregular order

of a surrogate, *in the matter of Hemiup*, 2 *Paige*, 317, 3 *id.* NEW YORK, 305, *S. C.* The petition set forth the sale, and stated that May, 1835.

the petitioners had acquired title by diverse mesne conveyances from the purchaser; that the heirs at law had commenced an action of ejectment to recover the premises from the petitioner; and that he had recently discovered his title under the sale to be defective, because no discreet person had been appointed by the surrogate to join in the sale, as was required by the act of 1813, then in force. From the report of the master to whom the matter was referred, it appeared that at the time the original order for sale was made, there was personal estate in the hands of the administratrix more than sufficient to pay all the debts of the intestate, and there was no evidence that any part of the personal estate, or of the proceeds of the sale of the real estate, ever came to the hands of the heirs at law; and a chancellor held that the petitioner, who was the grantee of the purchaser, was not, under such circumstances, entitled to an order confirming the sale, although the latter purchased the estate at the sale in good faith, without notice of the fraud committed by the administratrix, and paid the whole purchase money. The chancellor remarked that the application proceeded upon the gronnd that the sale was unauthorized, and *that the legal estate still remained in the heirs at law*—and that where the equities of the parties were equal, they must be left to the legal rights. He observed that the petitioner had had an opportunity of showing, before the master, that the purchase money paid by him had been received by the heirs at law, or had been appropriated for their benefit by the administratrix; but as he had failed to show any equity against the heirs in either of those respects, he could not, consistently with the equitable principles which governed his court, *divest the heirs of the legal title* to the property for which they had received no equivalent; and that the purchaser must be left to the covenants in his deed from the administratrix. This is probably a true exposition of this statute; and if so, it fully covers and disposes of this case. Wherever the directions of the statute, in relation to the conveyances and order of confirmation, are not substan-

tially complied with, the legal estate does not pass, unless the chancellor shall, upon a full view of all the facts and circumstances of the case, subsequently confirm the sale. This seems to have been the intention of the legislature, and it is the duty of courts to give it effect.

The recent case of *Jackson, ex dem. M'Fail and others* v. *Crawford,* 12 *Wendell,* 533, depends upon an entirely different principle—as does also the case of *Jackson, ex dem. Jenkins,* v. *Robinson,* 4 *Wendell,* 436. In both those cases the conveyances were in precise accordance with the directions of the statute : in the first case the proceedings were under the act of 1813, and a third person united with the administrator in the conveyance ; in the other case the sale was confirmed by an order of the surrogate, and the conveyance executed accordingly, under the act of 1819. The objection in both cases went to the regularity of the preliminary proceedings, which it was held could not be collaterally inquired into, enough having been shown to give the surrogate jurisdiction of the case. The same doctrine was also held in *Jackson, ex dem. Bear,* v. *Irwin,* 10 *Wendell,* 441. The remedy in such cases is by appeal. The judge, therefore, was correct in holding that the legal estate in the premises was still in the plaintiffs, and that they therefore were entitled to recover.

The defendant may still have relief, by an application to the court of chancery under the act already referred to. 2 *R. S.* 105.

Motion for new trial denied.