## Atkins and wife *vs.* Kinnan.

## Atkins and wife and Tunison *vs.* Bostwick.

## Atkins and wife and Tunison *vs.* Caywood.

A deed where a *sale* is had under a *surrogate's order,* omitting to *set forth at large* the order of sale made by the surrogate, is *inoperative* at law until confirmed by the chancellor ; it need not be *literally* recited, but every substantial part of it should be set forth.

Where measures are authorized by statute in derogation of the common law by which the title to land of one is to be divested, and transferred to another, every requisite having the semblance of benefit to the former must be strictly complied with.

So where the interest of a party is to be affected by an order which is required by *statute* to be drawn up in a *specified form,* the requirement must be exactly pursued, or the order is void.

A *surrogate's order of sale* of real estate for the payment of debts, cannot ordinarily be impeached *collaterally* even for *fraud ;* if the surrogate obtains jurisdiction by the presentment of an account of the estate and debts of the deceased, his adjudication that the personal estate is insufficient for the payment of debts, followed by an order of sale, is conclusive in any collateral proceeding.

Such adjudication is examinable only on appeal, or by a proceeding in the nature of an appeal.

*It seems* that an *account of debts,* stating neither the names of the creditors, the amounts due them severally, nor the consideration of indebtedness, would *not* confer jurisdiction upon the surrogate ; nor, *it seems,* would funeral expenses of the deceased be a proper item of such account.

A *penalty* incurred by the deceased in a contract made by him while living, is a proper item of such account, and will be deemed due to its whole amount, either as equivalent to actual damages, or as stipulated damages. |

The above were actions of *ejectment,* tried at the Tompkins circuit, before the Hon. Robert C. Monell, one of the circuit judges.

*Jane*, the wife of Atkins, and *John L. Tunison*, were the children, heirs at law and devisees of James Tunison, who died seised of a tract of 250 acres of land, situate in the now county of Tompkins, and who by his will, devised *one-third* of the tract to his daughter Jane, and the remainder to his son John L. Tunison, and appointed Rynear Covert his executor, who proved the will, and took upon himself the execution thereof in June, 1807. The will was proved before the surrogate of *Seneca* county, within which county the premises were then situate; but on the erection of the county of *Tompkins*, they were included within the latter county. The first above action was commenced in 1834, and the others in July, 1836, and were brought for the recovery of portions of the above tract. The plaintiffs *prima facie* showed a right to recover. On the part of the defendant, it was shown that on the 12th Sept. 1809, the *surrogate* of the county of *Seneca*, on the application of the *executor* of the will of *James Tunison*, made an order for the sale of two portions of the above tract of fifty acres each, for the payment of the debts of the testator, and that the same were sold in pursuance of such order, and conveyed by the executor, to one *Philip Tunison*, and the other to *John Caywood*, by deeds bearing date in 1809 and 1813 : under which deeds the defendants claimed title. It was insisted, that notwithstanding the proofs exhibited by the defendants, the plaintiffs were entitled to recover, because : 1. The *domicil* of *James Tunison*, the testator, at the time of his decease, was *in the state of New-Jersey*, and not in the county of Seneca *within this state*, and that consequently the *surrogate of Seneca* had not jurisdiction in the matter; 2. That though it should be found that the *domicil* of the testator *was within this state*, that yet the surrogate had not jurisdiction, on account of the insufficiency of the *account* and *inventory* presented to him by the *executor*, on the application for an order of sale : and 3. If it should be held that the account and inventory were unexceptionable, that yet the defendants had failed to establish a title, by reason of the *omission* to *set forth at large* the surrogate's order of sale in the deeds executed by the executor, in compliance with the

requirements of the statute under which the proceedings were had. On the question of the *domicil* of the testator, the proof, which was contradictory, was submitted by the judge to the jury, with instructions that if they should find that the domicil of the testator at the time of his death was within this state, to find a verdict for the defendants; otherwise for the plaintiffs. The jury found for the defendants, and the plaintiffs now ask for a new trial. The following is a copy of the *account* and *inventory* exhibited to the surrogate :

" A just and true account of the debts owing from James " Tunison at the time of his death; and the personal estate of " the said James Tunison :

| | |
|---|---:|
| " To debts owing several persons, together with his funeral char-<br>" ges in the state of New-Jersey,..................... | $145 00 |
| " To debts owing sundry persons in the county of<br>" Seneca, and to expenses in proving a will, ...... | 6 50 |
| "To the penalty incurred in a lease to Abraham Long-<br>" con and John Caywood, of Ulysses,............. | 500 00 |
| | $651 50 |

" Contra—Cr.

| | | | | |
|---|---|---|---:|---:|
| " By amount of personal estate left in<br>" Ovid, ........................ | | | $13 75 | |
| " By ditto ditto sold in<br>" Jersey, ........................ | | | 95 00 | |
| | | | | $108 75 |

" Balance owing from said estate,................ $542 75"

The *deed* from the executor to *Philip Tunison,* the purchaser of one of the portions of 50 acres, after reciting the seisin of James Tunison, the making of his will, the proof thereof before the surrogate of *Seneca,* and the assumption of *its* execution by the executor, proceeds as follows : " And whereas, due proof " hath been made to the surrogate, pursuant to the laws in such " case made and provided, that the personal estate of the said " testator was insufficient to pay his debts; and whereas, as the

" said surrogate did, on the twelfth day of September, in the year
" of our Lord one thousand eight hundred and nine, by his order
" under his hand and the seal of his said office, in pursuance of
" the statute of the state of New-York, in such case made and
" provided, authorize, empower and direct the said Rynear (the
" executor meaning) to sell and convey the above described fifty
" acres (the same having been before particularly described) of
" land, being part of lot number sixty-eight, in the town of
" Ulysses aforesaid, and a deed of conveyance to be executed
" therefor.    Now THEREFORE, THIS INDENTURE WITNESSETH,
" that the said Rynear Covert, by virtue of the said last will and
" testament, and in pursuance of the order of the said surrogate,
" and in consideration of the sum of one hundred and seventy-five
" dollars to him in hand well and truly paid, the receipt whereof
" is hereby confessed and acknowledged, hath granted," &c., pro-
ceeding in the usual form of a conveyance of real estate, down
to the *habendum* clause, which is in these words : " To have and
" to hold, all and singular the said fifty acres of land, &c. unto
" the said Philip Tunison, &c., as fully, freely and absolutely as
" he the said Rynear Covert, executor as aforesaid, might, could
" or ought to do by virtue of the said last will and testament, and
" in pursuance of the authority vested in him for that purpose by
" the said surrogate."    The deed to *Caywood* was more imperfect
than the one just recited, in respect to setting forth the order of
the surrogate. The surrogate's *order of sale* states the presenting
of the petition by the executor, and sets forth the substance of
it, viz : that the personal estate of the testator was insufficient
for the payment of his debts, and praying the aid of the
surrogate in the premises.    The surrogate then proceeds by sta-
ting that he thereupon made an order for all persons interested
to show cause, &c.: that the same was duly published, and that
on the day appointed, he proceeded to hear and examine the
proofs and allegations of the executor, and upon due proof and
examination, found and adjudged that the personal estate of the
testator was insufficient for the payment of his debts, and that
the executor had applied such parts of the personal property as

had come to his knowledge, towards the payment of the debts of
the testator, and that there yet remained due and unpaid the sum
of $500, and the necessary costs and charges attending the appli-
cation to him the surrogate, and he thereupon orders and deter-
mines that two parcels of land of fifty acres each, (particularly
describing them) be sold, and that a deed of conveyance be exe-
cuted therefor by the executor. Besides the questions as to the
jurisdiction of the surrogate, and the setting forth of the order of
sale in the deed of the executor, other questions were raised on
the trial and discussed at the bar, on the motion of a new trial,
which are not here noticed.

*A. Gibbs,* for the plaintiffs.

*Ben Johnson,* for the defendants.

*By the Court,* COWEN, J. After disposing of some minor
questions, the judge proceeded as follows :

Thus these verdicts are brought to depend exclusively on the
form of the proceedings before the surrogate, and the deeds from
the executor. If these were, on their face valid, as being a
compliance with the statute, 1 *R. L. of* 1801, *p.* 223, 4, § 20
*and* 21, the title of all the defendants was perfect, under the
finding of the jury upon the question of domicil. If not, the
plaintiffs are entitled to recover, unless there be other impedi-
ments which can have no operation in disposing of these cases.

By § 20 of the statutes above referred to, the executor was
bound to make a *just and true account* of the personal estate
*and debts,* as far as he could discover the same, and deliver it,
with a proper petition, to the surrogate, who might, on due
inquiry, order a sale of real estate, if he should find the personal
estate insufficient to pay the debts. It was mentioned in argu-
ment that the account, when presented, was not sworn to by the
executor ; but no such objection being made on the trial, it
cannot be entertained here.

It is clear that we cannot, in this collateral proceeding, inquire
whether, in fact, there were any debts due over and above the

personal estate. The petition and account of the debts and estate were the papers to confer jurisdiction under the statute; *Ford* v. *Walsworth,* 15 *Wendell,* 449 ; and if they were sufficient, as showing a balance against the estate in proper form, the adjudication of the surrogate that a balance was due, followed by his order of sale, must be received as conclusive. *Jackson, ex dem. Jenkins,* v. *Robinson,* 4 *Wendell,* 436. Such a proceeding cannot, ordinarily, be impeached, in a collateral procceding, even for fraud, where all persons interested are properly made parties according to the statute. The doctrine is quite familiar in examining the proceedings of all courts. *Per Sergeant J. in Winner's appeal,* 1 *Whart. R.* 105, 106. *M'Fadden* v. *Geddis,* 17 *Serg. & Rawle,* 336, *and cases there cited.* The difference lies between a want of jurisdiction and error. In the former case, the whole is *coram non judice* and void : in the latter, the proceeding can not be impugned in a collateral action, even though it be erroneous on its face, *Jackson, ex dem. M'Fail,* v. *Crawfords,* 12 *Wendell,* 533 ; and even though it relate to a fact which in a former stage of the proceeding might have been essential to confer jurisdiction. *Per Shaw, C. J. in Betts* v. *Bagley,* 12 *Pick.* 582. It is examinable only on a direct proceeding, as by an appeal, or a proceeding in nature of an appeal ; and where there is no remedy of that kind, it concludes forever.

The whole case is then narrowed down to two of the points made by the plaintiffs' counsel : 1. Whether the account of debts and personal property filed with the surrogate were sufficient to give him jurisdiction, and 2. Whether the deed, in omitting to state his order at large, is therefore void.

The first objection was levelled particularly against the account of debts due from the estate. In all three of the causes, it was said, neither person nor amount, nor consideration are mentioned as to some of the debts, and in the action against Caywood, it was added, what in fact is equally applicable to all of them, that some of the debts arose after the testator's death. The statute 1 *R. L. of* 1801, 323, § 20, should doubtless be so construed as to facilitate the detection of fraud in simulating

debts, thus wrongfully disinheriting heirs or divesting the claims of devisees. In that view, it may be too strong to say that a lumping of the debts throughout, as is done here in respect to part, would be a compliance with the act. It would not much resemble an account in any sense of the word. But it is not necessary to say definitively, whether that would be a fatal defect, nor whether funeral expenses are a debt of the testator within the meaning of the act; for there can be no doubt that the account of the debt of $500 stated to have been due to Longcon & Caywood of Ulysses, by way of penalty in a lease, was sufficiently specific. This it is said must of necessity be more than the real debt, because it is stated as a penalty. That is not so. We ought to intend rather that the damages for the breach equalled the penalty, or that this was in the nature of liquidated damages. Again, if the whole penalty were wrongfully allowed, the objection does not relate to jurisdiction. The court having power to award that any balance was due from the estate, excess was *error* only, and must here, notwithstanding, be taken for the true sum. That item will, of itself, sustain the proceedings, even if we reject all the others as nullities.

2. In respect to the form of the deed; the statute, 1 *R. L.* by *Kent & Radcliff*, 1801, *p.* 324, § 21, requires that the sale shall be made and conveyances for the same executed by the executors, &c., applying for the order; " and the conveyances for the same shall set forth *such order at large;* and shall be valid, &c., against the heirs and devisees of such testator or intestate, and all claiming by, from or under them."

In strict prudence, even at common law, and independent of any statutory injunction, such a deed should recite the authority under which the executor acted; for, though such a recital would not, as against persons other than the grantor or those claiming under him, be evidence *of the order*, it would, even in respect to strangers, be proof to connect the grantor with the order, as a cotemporaneous declaration that the agent was acting as such, and not in his own right. The omission of such a re-

cital would put the party claiming under the deed, to show the fact by proof *aliunde*, as he must in all cases against the heir or devisee prove the original order. Probably there would not, in general, be much difficulty in establishing the connexion which would be intended, on its appearing that the grantor had no pretence of title in his own right, for the law refers the inten-·tion to the lawful, rather than the wrongful capacity. *Per Holt, C. J. in Parker* v. *Kett,* 1 *Salk.* 95, and 1 *Ld. Raym.* 658. Yet all this, is mainly for the benefit of the grantee. What advantage the heir or devisee or creditors can derive from the recital in a deed which is to go into the hands of an adverse claimant, the recital too of an order which is matter of record, it is perhaps difficult to conceive. The deeds refer to the order, and one of them mentions its date in such a way, that any one can find it in all its relations and dependencies at the fountain head ; and if we could feel ourselves warranted in the belief that no benefit whatever was intended by the recital to any except the grantee and those claiming under him, I, for one, should then have no difficulty in saying, that it is not for the plaintiffs to raise the objection. *Quilibet potest renunciare juri pro se introducto.* 2 *Inst.* 183.

But the matter has not been thus regarded by the legislature. It is true, as was said on the argument, that there is no express adjudication in this court, declaring the want of such a recital fatal to the conveyance. The farthest we have gone is in *Rea* v. *M'Eachron,* 13 *Wendell,* 465, which avoids it for actual want of the surrogate's order of confirmation. A late statute has, however, gone farther, 2 *R. S. 2d ed.* 48, § 61 *to* 65 *inclusive.* These sections provide that when the conveyance omits *to set forth at large* the order of the surrogate, either in case of a past or future sale, the chancellor shall make such order confirming the sale and conveyance as he shall deem equitable, on its appearance to him that the sale was made fairly and in good faith. The omission is put on the same footing in point of materiality, as if, on a sale under a previous statute, now repealed, some discreet person had not concurred in the conveyance with the

personal representative. The statutes bearing upon this question are cited, and their material provisions noticed, by Sutherland, J. in *Rea* v. *M'Eachron*. I collect from them, that the legislature regard the recital in question as beneficial to the heirs, devisees or creditors ; as meaning that its omission shall not be overlooked in a court of law ; nor the nonreciting conveyance be made available except on investigation and an order of confirmation by the court of chancery. This is certainly right, if there could be made out a probable benefit in the recital, under any supposable circumstances, to heirs, devisees or creditors. Doubtless the legislature must have proceeded on this idea ; and, if so, it is not for us to deny that they were correct. At any rate, by pronouncing the conveyance good, without the requisite being supplied by the chancellor, we should supersede his jurisdiction ; and in that respect, at least, our decision would conflict with the statutory provisions. *See Ex parte Hemiup*, 2 *Paige*, 316. 3 *id.* 305. Where certain steps are authorized by statute in derogation of the common law, by which the title of one is to be divested and transferred to another, every requisite having the semblance of benefit to the former must be strictly complied with. This is abundantly exemplified in the cases upon sales for United States direct taxes. *Jackson, ex dem. Cook* v. *Shepard*, 7 *Cowen*, 88, *and cases there cited.* So where the interest of another is to be affected by an order which a statute says shall be drawn up in certain words, giving the form in a schedule, this must be exactly pursued, or the order is void *Davison* v. *Gill*, 1 *East*, 64. The case cited was of a proceeding by justices, to stop an old foot way and substitute a new one, the statute under which they acted requiring " that the forms of proceedings set forth in the schedule annexed, shall be used on all occasions, with such additions or variations only as may be necessary to adapt them to the particular exigencies of the case." Lord Kenyon, C. J., observed, " I cannot therefore say that these words are merely directory. Power is given to the magistrate to take away, on certain conditions, a right which the public before enjoyed ; and this is to be done in a certain

prescribed form, with such additions and variations only as the locality of the description may require. Now here there is a material variance in the order from the form prescribed ; for it does not set forth the length and breadth of the new path set out in lieu of the old one." The court, therefore, held the order void ; and so the public still entitled to the use of the old path through the plaintiff's land. *And see Plowd. Comm.* 206; 1 *Kent's Comm.* 466, *3d ed., note d.* It is said in *Plowden,* "Every statute that limits a thing to be done in a particular form, although it be done in the affirmative, includes in itself a negative, viz. that it shall not be done otherwise." And this is clearly so of all statutes which in affirmative words appoint or limit an order or form in things which were not known to the common law. *Plowd. Comm.* 113. In the case at bar, a title was to be divested and transferred to another, in a new form, and under a naked power conferred by statute. After providing for the surrogate's order of sale, 1 *R. L. of* 1801, 323, 4, § 20, the next section says the conveyance shall set forth his *order at large.* That certainly was not done within the meaning of the statute, either in the deed to Philip Tunison or Caywood. The *order* recited all the previous proceedings : the account and petition for sale by the executor, naming him, the order to shew cause, its publication, the hearing of the proofs, the adjudication that the estate was in debt and its personal assets insufficient having been all applied ; and a balance of 500 dollars beside costs yet remaining due. The order then directs the sale, defining the two parcels of 50 acres each to be taken from the 250 acres. The deed to *Philip Tunison* comes nearest a recital of this final order, and that is simply that the surrogate had by his order of such a date directed such a parcel of 50 acres to be sold, describing it as in the order. The deed to Caywood does not even refer to the date, nor recite the description. The best is a recital of the order but in part. The adjudication showing the amount due after the exhaustion of the personal assets, was important information both to the devisees and to creditors. It was in fact a part of the same order, indicating the amount

of money to be raised by the sale; and why was not that material as well as the mere description of the land? The recital of the previous proceedings was also very well; and in practice, we believe, usually makes a part of the order of sale. The statute demanding the order at large, we cannot say it is complied with so long as the deed omits to recite the whole as it stands upon record. We do not say it should be literally recited; but it is impossible to say that a document is set forth at large unless every part is substantially presented. That we think is the least that the statute calls for. The conveyances from the executor were, therefore, void, and must continue so unless they shall be rectified on a proper application to the chancellor.

Upon the ground of the defective recital alone, new trials are granted in all three of the causes.