## FARRINGTON *vs.* KING.

*In the matter of the Estate of* MATTHEW KING, *deceased.*

Upon an application by an administrator, after the filing of an inventory, for the sale of the real estate of an intestate for the payment of his debts, the Surrogate gains jurisdiction by the presentation of the petition, as against all parties regularly brought into Court.

When jurisdiction has been obtained of the subject matter, and of the parties in interest, and the Surrogate has made an order for the sale of the property, it will be presumed that he had sufficient evidence of the facts necessary to be ascertained, before making such judicial determination.

After jurisdiction is obtained, errors or irregularities in its exercise cannot be impeached collaterally, but only on appeal.

Where an order has been made for the sale of the real estate, and the Surrogate has neglected to enter in his book, the demands which upon the hearing he has adjudged to be valid and subsisting against the estate, the error can be corrected afterwards by directing such an entry, *nunc pro tunc.*

After hearing the parties and passing upon the debts claimed, the Surrogate, if satisfied that all the provisions of the statute have been complied with, may, *from time to time,* order a sale of so much of the real estate as shall be necessary to pay the debts ; and if the first sale ordered, has fallen through, or has produced an insufficient amount, he may make other orders from time to time, till all the debts are paid, and all the real estate necessary for that purpose is exhausted.

If the administrator make a voluntary application for the sale of the real estate, all the parties be brought in, a hearing had, the debts proved, and an order of sale made, the administrator cannot at his option discontinue the pro-

ceeding, but the creditors may insist upon its further prosecution, and apply as may be necessary for reviving or speeding the proceedings.

In determining, upon proceedings to sell the real estate, whether the debts claimed are barred by the Statute of Limitations :—Held that the statute ceases running on the institution of the proceeding or the return of the order to show cause.

Whether, as to applications for the sale of real estate, the period of eighteen months after the issuing of letters forms any part of the time limited for the commencement of actions.—*Quære.*

BELL & COE, *for the Creditors.*
C. W. NEWTON *and* J. R. WHITING, *for the Heirs.*

THE SURROGATE. On the 3d March, 1841, Catharine King, the administratrix, presented her petition to the Surrogate, stating that letters of administration were granted to her, April 24, 1840 ; that she had filed an inventory of the personal estate ; and had discovered the same to be insufficient to pay the debts of the deceased. The petition also set forth the manner in which the assets had been disposed of and applied, and a statement of the outstanding debts of the intestate, so far as had been ascertained, and after giving a description of the real estate belonging to the deceased, the value of the respective parcels, the names of the occupants, and of the heirs at law, who were minors, the petition prayed for authority to be given to the administratrix, to mortgage, lease or sell, so much of said real estate as should be necessary to pay the debts.

The minors, Margaret and Catharine King, were both under fourteen years of age, and residents of the county of Kings. Having no general guardian, Isaac Fitz, a disinterested freeholder, was appointed by the Surrogate, March 3d, 1841, guardian for said minors, for the sole purpose of appearing and taking care of their interests in this proceeding.

An order was on the same day made by the Surrogate, for all persons interested in the estate to appear on the 22d day of April, 1841, and show cause why the prayer of the

petition should not be granted. The guardian of the infants admitted due service of this order, March 3d, 1841, and the order was duly published in the New-York Journal of Commerce. Only one of the tenants appears to have been served with a copy of the order, viz.: the occupant of the lot on Oliver Street.

On the 28th of April, 1841, the adminstratrix having filed the requisite bond, the Surrogate made and signed an order, directing the administratrix to sell the lot on Oliver Street.

The administratrix, as appears by her report, filed Oct. 20, 1841, sold the premises to Robert Shiells, for $2,300. The sale was confirmed by the order of the Surrogate, dated Oct., 21, 1841. The purchaser having objected to the title, he was cited before the Surrogate; his objections were sustained, and on the 14th day of Dec., 1841, an order was made vacating the sale.

Thus the proceedings stood, when on the 26th Dec., 1849, a petition was presented to me by E. W. Farrington, of the firm of J. Beveridge & Co., stating that the intestate was indebted to said firm, in the sum of $322, and interest, and claiming to have the proceedings for the sale of the real estate revived, and an order made for the sale, mortgage, or lease of the other parcels of land, mentioned in the original application of the administratrix.

Upon this petition, an order was made, requiring the administratrix to show cause, on the 10th January, 1850, why the prayer thereof should not be granted.

The administratrix not appearing, but making default, another order was made January 10, 1850, requiring the tenants of the real estate, the widow, heirs and next of kin, and all other persons legally interested, to show cause on the 24th January, 1850, why the said proceedings should not stand revived, and the prayer of the petition be granted. This order was duly served, and on the day appointed, the administratrix, and Margaret and Catharine King, the heirs of the intestate, who had arrived at full age, appeared, and

the two latter objected, upon grounds which will be adverted to fully in the progress of the discussion of the case.

By the presentation of the original petition, and the order made thereon, the Surrogate obtained jurisdiction in this case, as against all parties who were regularly brought into Court. The application was made by the administratrix, within three years after the granting of letters of administration, and after an inventory had been made and filed according to law. The heirs, who were then minors, were duly represented before the Court, by a guardian regularly appointed. The petition was substantially in proper form, and on being filed, the Surrogate became possessed of authority under the statute. (2 *R. S.*, 3*d ed.*, *p.* 163, §§ 1, 2, 3, 4.) The proceedings for the appointment of a guardian, and the service upon him of a copy of the order to show cause, why the real estate should not be mortgaged, leased or sold, made the infants parties, so as to be bound and affected by the subsequent proceedings. Jurisdiction was thus obtained of the subject matter, and also over the persons to be affected by the sale. (*Jackson* vs. *Irwin*, 10 *Wendell*, 441 ; *Atkins* vs. *Kinnan*, 20 *Wendell*, 245 ; *Dakin* vs. *Hudson*, 6 *Cowen*, 221 ; *Ford* vs. *Walsworth*, 19 *Wend.*, 336 ; *Bloom* vs. *Burdick*, 1 *Hill*, 139 ; *Schneider* vs. *McFarland*, 4 *Bar. Sup. Ct. R.*, 139.)

On presenting the application, it must be made to appear to the Surrogate, that the administrator has proceeded with reasonable diligence in converting the personal property into money, and applying the same to the payment of the debts, and that there remain debts unpaid, for the satisfaction of which a sale may be made. (2 *R. S.*, 3*d ed.*, *p.* 164, § 8 ; *Ibid.*, *p.* 165, § 18.) By the order of the 3d March, 1841, these facts were preliminarily ascertained by the Surrogate, and a day was assigned for the parties in interest to show cause why the sale should not be made. The infants, as I have already shown, had through their guardian, proper notice of that order.

On the return of this order, such proceedings were had

before the Surrogate, that he made the order of sale, dated April 28, 1841. The important questions in this case, arise out of the terms of that order, and the neglect to enter the debts found due, in the Surrogate's books. The order, which was drawn by the guardian of the infants, after reciting the petition of the administratrix, proceeds thus : " And whereas, such proceedings have been had thereon, pursuant to the statute, in such case made and provided, that the said Surrogate is satisfied, upon due examination in the premises, that the said administratrix has fully complied with the requisition of the said statute, and has also, executed with sufficient sureties the bond in such cases required, and that the personal estate of the said Matthew King, deceased, is insufficient to pay his debts, and that she has ascertained, that the sum of four thousand seven hundred and fifteen dollars and twenty-four cents, is still due and unpaid, and that the same cannot be raised by mortgage, or lease of the real estate of the said deceased." The order then directs the sale of the lot on Oliver Street, and requires the administratrix to make return according to law. It is evident, I think, from an examination of the phraseology, that the word "she," is a slip or clerical error. The clauses immediately preceding and succeeding it, relate to judicial determinations of the Surrogate, and the fair intention of the intermediate paragraph, would seem to be, that the Surrogate had ascertained the debts at $4,715 24, the precise amount at which they are stated in the petition.

By Section 17 (*p.* 165, 2 *R. S.*), it is provided that the Surrogate shall make no order for sale, until, upon due examination, he is satisfied that the executors or administrators have fully complied with the preceding provisions of the statute, that the debts are justly due and owing, and are not a charge upon the real estate, that the personal estate is insufficient for their payment, and by Section 18 (*p.* 166), that the executors or administrators have proceeded with reasonable diligence, in con-

verting the personal property into money and applying the same to the payment of the debts. Section 19, also provides, that the Surrogate, when so satisfied, shall ascertain whether sufficient moneys for the payment of the debts can be raised by mortgage, or lease ; and Section 22, that if it shall appear, that the moneys required cannot be so raised, he shall, from time to time, order a sale of so much of the real estate, as shall be sufficient to pay the debts.

Now, by his order, the Surrogate directed a sale ; by the previous proceedings, he had fully obtained jurisdiction of the subject matter and of the persons ; there is nothing in the statute requiring any particular recitals in the order of sale ; the only order spoken of, after the order to show cause, is the order of sale ; and the presumption that every officer does his duty, may well be allowed, in reference to acts and circumstances which are not necessary to give jurisdiction. It was the duty of the Surrogate to come to a judicial determination as to certain facts, before making this order, and having made the order, the reasonable inteñdment or inference is, that he performed his duty in those respects. Although it has been held, that no recital in an order can establish jurisdiction (*Ford* vs. *Walsworth*, 15 *Wend.*, 449 ; *Jackson* vs. *Sheppard*, 7 *Cowen*, 89), and that jurisdiction cannot be presumed (*Corwin* vs. *Merritt*, 3 *Bar. Sup. Ct. R.*, 341) ; yet, the other cases found in the books abundantly confirm the proposition, that when the authority is once gained, under the statute, over the subject, in general any error or irregularity in exercising jurisdiction, or in the subsequent proceedings, cannot be impeached collaterally. The acts are not void, but can be corrected only on appeal. (*Hovey* vs. *Smith*, 1 *Barbour's Sup. Ct. R.*, 372 ; *Flinn* vs. *Chase*, 4 *Denio*, 90 ; *Jackson* vs. *Robinson*, 4 *Wend.*, 437 ; *Jackson* vs. *Crawford*, 12 *Wend.*, 533, *and cases above cited.*)

One of the objections in *Jackson* vs. *Robinson* was, that no evidence existed, otherwise than by the recital of the orders, that there were any debts of the intestate, or that

there was a deficiency of personal assets, or that the assets had been duly applied; and in *Jackson* vs. *Irwin*, the order of sale stated the amount of debts in the aggregate, without any more particular specification. These points were not considered, however, as affecting the validity of the proceedings. Upon the whole, therefore, I think the order of sale of April 28, 1841, sufficient to establish every adjudication necessary to be made by the Surrogate, to effect a sale of the real estate. That order directed a sale of a single lot, and in consequence of a defect in the title, the purchaser refused to take the deed, and the sale was vacated. By Section 22 (2 *R. S., p.* 166), the Surrogate is authorized "from *time to time* to order a sale of so much of the real estate," as shall be necessary to pay the debts. This provision confers power, if the first sale has fallen through, or has produced an insufficient amount, to make other orders from time to time, till the debts are paid, and all the real estate. necessary for that purpose is exhausted. The lapse of time which has been allowed to intervene from the vacation of the first order to sell, is no bar to further proceedings now. The proceedings have never been discontinued, or finally closed, and I do not see why the creditors should suffer for the fault, or negligence, or delay of the administratix. The statute of limitations does not cut them off, because as to this proceeding, under the most unfavorable view to the creditors, the time is to be counted up to the period of filing the petition, or the return of the order to show cause, in analogy to the rule, that the statute ceases running at the commencement of a suit, *quoad hanc litem.* The heirs were liable for the debts, at law, or in equity (2 *R. S., 3d ed., p.* 548, § 42), but the statute expressly provides that no suit shall be brought against them within three years from the time of granting letters testamentary or of administration, and if after the expiration of that time, such suit shall be brought, upon proof of an application having been made, before the expiration of that time, for an order of sale by the executor

or administrator, such suit shall be stayed until the result of such application, and if an order for sale be granted thereupon, such suit shall not be any further prosecuted unless the plaintiff alleges that lands have descended to the heirs which were not included in any order of sale, in which case, a decree in such suit shall not charge the land so ordered to be sold, and the plaintiff proceeding in such suit, shall not be entitled to any share in the distribution of the moneys arising on the sale of any premises pursuant to such application. (2 *R. S.*, 3*d ed.*, *p.* 171, §§ 57, 58.)

The statute gives a concurrent remedy to creditors in the Courts of Law and Equity, and the rule of limitation applicable to simple contract debts, is that prescribed for the commencement of suits at law. (*McCartee* vs. *Camel*, 1 *Bar. Ch. R.*, 456.) But the reasonable construction of the 57th section, relative to suits against heirs, above cited, would seem to be, that the statute does not run as to the real estate comprised in any application made by the executors or administrators to the Surrogate, so long as that application is pending, and undetermined. However that point might be disposed of in a suit against the heirs in a Court of Law or Equity, there cannot, I think, be any doubt, that in the present proceeding, the statute cannot be interposed as to debts which were not barred when the proceeding was first instituted. I may add, that as an executor or administrator cannot be required to account until the expiration of eighteen months after the issuing of letters, and a creditor cannot apply for an order on the executor or administrator, to show cause why the real estate should not be sold for the payment of debts, until an account be rendered, it may be urged with great reason that the period of eighteen months after the issuing of letters, forms no part of the time in counting the period the statute has been running against a claim. (2 *R. S.*, 3*d ed.*, *p.* 544, § 8.)

Again, as to the matter now pending, these debts have been passed upon by the Surrogate, and adjudged to be

valid and subsisting, an adjudication which disposes of all objections to their validity.    Another objection by the heirs to a further order of sale is, that this being a voluntary application by the administratrix, she cannot be compelled to continue it.    In its origin it was voluntary, but she having presented the petition, and the Surrogate having made an order to show cause, and the heirs and creditors having been brought in as parties, and an order of sale having been made, the proceeding cannot be discontinued at the option of the applicant.    Other rights have accrued, all parties are brought under the legal control of the Court, the Surrogate has authority to order a sale imperatively, and if the administratrix refuse to execute the requisite bond, a disinterested freeholder may be appointed to carry out the order, and make the sale. (2 *R. S., 3d ed., p.* 167, § 27.)

Besides, I do not understand the administratrix to object to the continuance of the proceeding.    She has appeared, and does not interpose any obstacle to its further prosecution.·

I ought not to hesitate, therefore, in my judgment, to order a sale of so much of the premises comprised in the original petition, as would be sufficient to raise the moneys requisite to pay the debts, were there not another difficulty, as to which I confess some embarrassment.    By Section 16 (*p.* 165), it is provided that the demands which, upon the hearing, the Surrogate shall adjudge valid and subsisting against the estate, shall be by him entered in a book of his proceedings, fully and at large.    If this were the only provision on this point, it might perhaps be considered as merely directory.    The order of sale shows the debts had been ascertained, at the precise amount stated in the petition, by referring to which, the names of the creditors, and the amounts of their respective debts can be known, and the debts ascertained by the Surrogate fixed.    There is a mode, therefore, of discovering from the papers what debts the Surrogate adjudged to be valid and subsisting, but

still there is not the official entry specified by the statute. Now the 22d Section (*p.* 166), makes this entry material. It is there declared that the Surrogate shall, from time to time, order a sale of so much of the real estate " as shall be sufficient to pay the debts which the Surrogate shall have entered in his books as valid and subsisting."

Even after the Surrogate has obtained full jurisdiction, there are some statutory regulations relative to sales of real estate, which must be strictly pursued, or the proceedings will be void. Of this character are the directions that the deed shall recite the order at large (*Atkins* vs. *Kinnan*, 20 *Wend.*, 241), and that the order of confirmation must be entered previous to the execution of the conveyance. (*Rea* vs. *M'Eachron*, 13 *Wendell*, 465; *In the matter of Hemiup*, 2 *Paige*, 317; 3 *Id.*, 3, 5.) The provision for the entry of the debts found due, was new in the Revised Statutes, and was designed to furnish a formal and specific list of the particular debts adjudicated to be due. The decision of the Surrogate is a *quasi* judgment in the proceeding, in relation to which the order of sale is analogous to an execution at law, so that from time to time distinct parcels of real estate may be ordered to be sold, until the debts are all satisfied. I think, therefore, that the entry of a list of the debts is necessary. Such was the practice of the Court at the period the order of sale was made, and the neglect to do it in this instance, may be reasonably accounted for, by supposing the statement usually signed by the Surrogate in such cases, to have been mislaid or lost. If that statement were now found among the papers, in proper form, there could be no objection to entering it in the books before ordering another sale; and as by an examination of the petition and list of debts annexed, together with the order of sale, the debts adjudged by the Surrogate to be valid and subsisting, can still be ascertained, I can perceive no sound reason why the entry cannot be made at this time, *nunc pro tunc.* (*Proctor* vs. *Wanmaker*, 1 *Bar. Ch. R.*, 302; *Butler* vs.

*Emmett*, 8 *Paige*, 22; *Vreedenburgh* vs. *Calf*, 9 *Paige*, 128; *Skidmore* vs. *Davies*, 10 *Paige*, 317; *Pew* vs. *Hastings*, 1 *Bar. Ch. R.*, 452.) This Court possesses the same authority as other tribunals, to remedy and correct errors or mistakes in the course of proceedings in cases where jurisdiction has been regularly acquired. It is a power essential to the administration of justice, and should be exercised when fit occasion occurs. The entry may therefore be made *nunc pro tunc*, and an order of sale in continuation of the original proceedings (*Fitch* vs. *Witbeck*, 2 *Bar. Ch. R.*, 163), and for the payment of the debts found due by the Surrogate in 1841, on the original application (*Gilchrist* vs. *Rea*, 9 *Paige*, 72), now be granted. All parties in interest, except the creditors, have had notice of this application, and if the heirs desire to show any payments that may have been made upon the debts since they were established, or to impeach them by newly discovered testimony, they will have that opportunity on the distribution of the proceeds of sale, under the 46th Section (*p.* 169), upon due notice given to the claimant. If the administratrix shall refuse to execute the bond, a disinterested freeholder may be appointed for the purpose of making the sale, to be nominated by the creditors (§ 27, *p.* 167), who will possess all the powers conferred by the statute upon executors and administrators (§ 28, *Ibid.*).