Beardsley, J.
The complainant (Samuel Sherwood) was the owner of three lots of land in the city of New-York, which had been conveyed to him subject to a mortgage for four thousand dollars, previously executed to the commissioners for loaning certain moneys of the United States, deposited with the state of New-York for safe keeping. Default was made in the payment of the interest which fell due on the mortgage upon the first Tuesday in October, 1839, and the commissioners advertised the lots for sale on the first Tuesday in February then next following. On the last mentioned day, and before the premises were offered for sale, the commissioners gave public notice of the terms or conditions of sale, among which were the following: 1. That the property mortgaged would be put up at the amount due on the mortgage and expenses, and would then be sold to the highest bidder; % That the purchaser must pay at the time of sale fourteen per cent, of the purchase money, and sign an agreement to comply with the terms of sale, and pay the expenses of the sale and of the deed to be given; 3. That if the terms secondly above specified were not complied with, the property would be re-sold immediately; 4. That the balance of the purchase money must be paid on the fourteenth of said February, when the deed would be delivered; 5. That if the balance was not so paid, the payment of fourteen per cent, should be forfeited, and the commissioners be at liberty to sell the premises again, or enforce the payment of the residue of the purchase money agreed to be paid.
On the day appointed, these lots were put up for sale by the commissioners. Several bids were made therefor, and they were finally struck off to William B. Sherwood at the sum of eleven thousand dollars, which he bid, and which was the highest sum bid at the sale. He was then required by the commissioners to pay the fourteen per cent., and sign an agreement specifying the terms of the purchase, but which he declined to *433 do at that time, saying he wished to see some person before doing so, and asking to be allowed a short time to ascertain if he could procure the money to pay on his bid. In about an hour, as is stated in the answer of the commissioners, Sherwood returned to the place of sale, and informed them that he was unable to make arrangements ‘ to comply with the terms of sale, whereupon the commissioners, as is set forth in their answer^ “ considering that no sale had been made of the mortgaged premises aforesaid to the said William B. Sherwood, inasmuch as he had not complied with the terms thereof before the said sale was completed &c., proceeded to sell, and actually offered the said premises again for sale, at public vendue, on the said first Tuesday of February, and struck them off to Robert L. Reade of the city of New-York as the highest bidder, and that he bid for the same upon such sale the sum of ten thousand five hundred dollars, and claims now to be the purchaser thereof.”
Reade signed an agreement according to the terms of sale as specified, and made the payment of fourteen per cent, as required ; and the only question necessary to be decided, in my view of the case, is as to the legality of this sale to him. If that was regular and valid, it foreclosed all right of redemption on the part of the complainant; but if not made in conformity with the provisions of the statute, it was null and void.
On default being made in the payment of principal or interest as it falls due, on any such mortgage as this, the statute declares that the commissioners of the county where the lands mortgaged are situated, shall be “ seized of an absolute and indefeasible estate in fee in the said landsbut tire right of redemption is not thereby barred, for the mortgagor, his heirs or assignsj may retain possession and redeem, as is particularly specified in the act. (Laws of 1837, p. 121, §§ 30, 33.) This right to redeem exists in full force until the premises are disposed of at a legal public sale, in conformity with the statute.
The authority to sell as conferred by this statute is special in its nature, and must be strictly pursued, or the sale will be invalid. The purchaser has notice of the extent and the limita- *434 tions of the power to sell, for it depends exclusively upon a public statute of the state, and he buys at his peril. If he purchases at a sale which the statute authorizes to be made, and which is conducted according to its provisions, a valid title is acquired ; but if the sale is not thus authorized and conducted, it is of no effect whatever. “ In every form in which the question has arisen, it has been held,” says Mr. Justice Bronson, “ that a statute authority by which a man may be deprived of his estate must be strictly pursued. In Thatcher v. Powell, (6 Wheat. 119,) Marshall, C. J. said it was a self evident proposition, that no individual or public officer can sell and convey a good title to the land of another, unless authorized so to do by express law; and the person invested with such a power, must pursue with precision the course prescribed by law, or his act will be invalid.” (Bloom v. Burdick, 1 Hill, 141.) Again : “ When lands are to be taken under a statute authority, in derogation of the common law, every requisite of the statute having the semblance of benefit to the owner must be strictly complied with.” (Sharp v. Johnson, 4 Hill, 99. See also Denning v. Smith, 3 John. Ch. Rep. 332, 344; Atkins v. Kinnan, 20 Wend. 241; Jackson v. Shepard, 7 Cowen, 88; Sharp v. Speir, 4 Hill, 76; Jackson v. Esty, 7 Wend. 148; Williams v. Peyton, 4 Wheat. 77; Hubley v. Keyser, 2 Pen. & Watts, 501.) And to the same effect is the statute under which this sale was made, for it declares, (§ 33,) that “ all purchases made contrary to the provisions of this section shall be void.”
The sale, which is set up as an effective bar to the right of the complainant, was made on the first Tuesday of February. When first exposed to sale on that day, William B. Sherwood bid for the mortgaged premises the sum of eleven thousand dollars, which being the highest bid, they were struck off to him. This is alleged in the bill and admitted in the several answers of the defendants. Reade in his answer says, that “William B. Sherwood, of the city of New-York, bid at such sale for the said three lots to the sum of eleven thousand dollars, and that the same was the highest sum bid for the same upon such sale “ but he denies that said lots were struck off to the said William *435 R Sherwood as the purchaser thereof, excepting under the condition and understanding that he should pay for and on account of the said lots, within a short period of time after said premises were struck off to him, the sum of fifteen hundred and forty dollars, or fourteen per cent, upon his purchase, as a part of said sum of eleven thousand dollars, and that he should sign an agreement to comply with the terms of sale; although this defendant readily admits the fact that said three lots of land were struck off to said William B. Sherwood as the purchaser thereof with this qualification, condition and understanding.”
The other answers are to the same effect. They admit that William B. Sherwood was the highest bidder, and that the premises were struck off to him. But they insist that his bid, and the striking off to him, should be held for naught, because he failed to pay the fourteen per cent, required by the terms of sale, and in other respects omitted to comply with those terms.
Much was said on the argument about fraudulent and sham bids, and it was strenuously urged that the bid of William B. Sherwood was of that character, and therefore the commissioners had a right to. treat it as a nullity and again expose the premises to sale. Let it be observed, however, that neither answer sets up or pretends that this bid was fraudulent or a sham. They-assert that the commissioners bad ‘power to prescribe such terms of sale as were adopted, and that when Sherwood failed to comply with those terms, the commissioners were authorized to put up the premises for sale a second time. On this ground, and not on the ground that the bid of Sherwood was a trick, is the regularity of the sale to the defendant Reade placed by the defendants in their answers, and on this ground should the case be decided. On the sale, Sherwood was recognized by the commissioners as a competent bidder, and the premises were struck off to him as such. The answers do not impeach the good faith of his bid. Had they done so, the parties might have gone to proof on the point. But by the defence interposed, the question of regularity, and not of fraud, is raised, and it is altogether out of place to argue it as a ques *436 tion of fraud, when the pleadings omit to raise - any such point for trial Or decision.
The premises then were “ struck offin the true Sense of the statute, (§§ 32, 33, 34,) to William B. Sherwood as the highest bidder. But he failed to pay the amount bid, as he also did to comply with the prescribed terms of the sale in several respects. What, under such circumstances, was to be done ? By the terms of sale, as fixed by the commissioners, the property was to “ be re-sold immediatelybut the statute is of paramount authority, and that declares, if any person to whom any such lands shall at any such sale be struck off, shall not pay for the same, then, and in every, such case, the said commissioners shall enter into and take possession of the said lands and premises. and let the same upon the best terms they can obtain for the benefit of the state, until the third Tuesday in September then next, and shall on the same third Tuesday in September, sell the said lands and premises at public vendue to the highest bidder.” (§ 33.) Here is no authority to put up the premises a second time at the sale on the first Tuesday in February, but on a failure to pay by any person to whom the premises are struck off, a very different course is directed to be pursued. A new power at once arises in favor of the commissioners, and a new duty devolves upon them; they are to take possession and lease, and not to re-sell, as was contemplated by the terms of sale adopted by the commissioners in this case. The statute provides for the very case which occurred in this instance, and the commissioners were bound to pursue its directions. It was not a matter entrusted to their discretion: it is a question of power, and, in my opinion, they had no authority whatever to offet the premises for sale a second time, on the first Tuesday in February, having already struck them off to Sherwood as the highest bidder.
For the September sales very different directions are given by the statute. If, at such a sale, any person to whom any such lands and premises shall (i be struck off, shall not pay for the same, then, and in every such case, the said commissioners shall bid therefor in behalf of the people of the state.” (§ 33.) *437 Thus, an effective sale will always be made in September, although a failure may occur in February. On a failure to pay by the person to whom they are struck off in September, the premises are again to be set up, and if need be, the commissioners are required to bid for the state; but on a like failure in February, the commissioners are to take possession and lease, and have no power to re-sell until September.
The terms of sale adopted by the commissioners in this case, seem to me, in several particulars, not warranted by the statute. They contemplate a sale on credit as to eighty-six per cent, of the purchase money: but by the statute the whole amount is to be paid down. (§§ 32, 33, 39.) They require the purchaser to “ sign the agreement to comply with the terms of salebut by the statute he must at once comply with its requirements. (Ibid.) It was intended that the commissioners should not involve the state in litigation to enforce the performance of such agreements. The sales should be for cash paid down at the time: deeds are to be given, and thus the matter would be closed. No payments could thereafter be “forfeited,”,as is prescribed in these terms of sale, and no agreement would remain to be performed or violated by the purchaser or the commissioners.
Such, in my opinion, is the true meaning of «the statute. I think the second sale was unauthorized, and the purchaser, Reade, acquired nothing by it; and I shall vote to reverse the decree which was made in the cause by the chancellor.
Bockee, Senator.
This cause involves the true construction of the 33d section of the act of April 4th, 1837, “ authorizing a loan of certain moneys belonging to the United States, deposited with the state of New-York for safe keeping.” There can be no doubt that the commissioners are bound strictly to pursue the authority given them by the statute. It is provided by this section of the statute, that when any lands mortgaged to the said commissioners according to this act shall be exposed to sale, and no person shall bid at such sale for the said lands a sum equal to the amount due on the mortgage for principal and interest, and the expenses of the advertisement and sale, or if any *438 person to whom any lands shall at any such sale he “ struck off” shall not pay for the same, then and in every such case the commissioners “ shall enter” and let the same, &c.; and it is also provided that the commissioners shall advertise and sell the premises on the third Tuesday of September following, and if the contingency shall again occur that any person to whom the lands are “ struck off” shall not pay for the same, then the commissioners shall bid therefor, in behalf of the people of this state, a,sum not exceeding the amount at which the said lands shall be appraised by the appraisers, in case such bidding shall be necessary to prevent the sale of such premises for a less sum. The statute also gives a right of redemption to the mortgagor at any time at or before the final sale of the mortgaged premises. If either of the two contingencies above mentioned shall happen—that is, if no person shall bid to the amount due on the mortgage with costs, or if the person to whom the premises are struck ioff shall not pay for the same—the statute doubtless intends and does in fact secure to the mortgagor the continuing right of redemption until the final sale of the premises on the third Tuesday of September following. This provision seems to be intended to protect the interest of the mortgagor, and to prevent the sacrifice of property, and should be construed favorably as it regards that object.
There is no dispute as to the facts of this case. The defendant Reade admits that the premises were “ struck off” to William B. Sherwood, subject to the condition and qualification of his complying with the terms of" the sale, that is, paying for the same. I presume this condition and qualification is always either express or implied in the ordinary sales at public auction. If the bidder to whom property is struck off omits to make payment, or otherwise to comply with the terms of sale, the vendor is certainly authorized to treat the ? striking off” as a nullity, and to put up the property again at auction and sell it. Such is the general rule; but it cannot apply to a public officer so far as to excuse him from a strict compliance with the special authority under which he acts. The direction of the statute is imperative. If the person to whom the property is struck off shall *439 not pay, the commissioners shall enter &c. The bidder who has failed to pay has certainly no claims. William B. Sherwood has nothing to do with this controversy. But his failure to pay has enured to the benefit of a third party, the mortgagor, who-has a right to insist that the commissioners shall strictly pursue the directions of the statute.
The great question in this cause is, what is the meaning of the words “ struck off,” as used in the statute 1 I suppose they are synonymous with the words knocked down,” as used by the learned chancellor. In common parlance, and in the language of the auction room, property is understood to be “ struck off” or “ knocked down” when the auctioneer by the fall of his hammer or by any other audible or visible announcement, signifies to the bidder that he is entitled to the property on paying the amount of his bid, according to the terms of the sale. Three things are necessary to complete an auction sale. There must be a bidder, the property must be “ struck off” or “ knocked down,” and the person to whom it is struck off must complete his purchase by complying with the terms of the sale.
The statute contemplates that property may be “ struck off” and not paid for. The argument of the respondent’s counsel implies, as I think contrary to the statute, that property is not to be considered as struck off until paid for. The commissioners would have the same power as any individual to re-sell property which has been struck off and not paid for, if they were not precluded by the statute from doing so. If the words “ struck off” mean what I have supposed them to mean, the failure to pay must necessarily work a postponement of the final sale till the following September. This is the extent of the evil, if it is an evil, as it regards the interests of the state. If the construction contended for on the part of the respondent’s counsel is correct, that the property is not “ struck off” until paid for, and if not paid for, that it is the duty of the commissioners to re-sell, then one of the contingencies contemplated by the statute in which the right of redemption will continue to the mortgagor cannot happen. That provision of the statute which we are now considering would be entirely superfluous. Strike out *440 these words in the first clause of the thirty-third section—“ or if any person to whom any such land at any such salé shall be struck off shall not pay for the same”—and the statute then reads exactly as it should read, if the construction given it by the court below is correct. Have we any power judicially to strike these words out of the statute ? I agree with the learned chancellor that if the premises are struck off at the sale in September, as provided by the latter clause of the thirty-third section, and the person to whom they are struck off neglects to pay the purchase money, the premises may be immediately put up and re-sold by the commissioners. But I cannot concur-in his conclusion that the same construction should be put upon similar language in the previous part of the section, relative to the proceedings of the February sale. The statute contemplates in both cases that the proceedings on the sale have advanced to that stage when the premises have been struck off to the highest bidder, and there has been a failure of payment. Then commences the dissimilarity. The line of conduct prescribed to the commissioners in one case is very different from that which is directed in the other. In the first case, in reference to the February sale, the statute explicitly directs the commissioners to enter on the premises, to let them on the best terms for the benefit of the state, and it preserves the equity of redemption in the mortgagor. In the latter case, in regard to the September sale, the statute obviously intends - that the sale, shall be final, and the equity of redemption is barred. Not only are the commissioners not precluded from re-selling the premises on failure of payment, but they are obviously required so to do. “ If the person to whom they are struck off shall not pay for the same,” then the commissioners are required to bid for the state to the amount of the appraised value of the premises, not exceeding the sum due on the mortgage with costs. In my view it is a very great error of reasoning to infer, that because the power of re-sale exists in this latter case, where it seems to be provided by necessary implication, that it also exists in the former case, where, oft failure of payment, the statute positively prescribes to the commissioners a very different coursé of action, *441 and directs them to enter upon the premises, to let them on the best terms, to have an appraisement, and to permit the mortgagor to redeem.
It was very strongly urged on the argument of this cause, that, on any other construction of the statute than the one which the chancellor has given to it, any irresponsible bidder might defeat a sale, or at least cause it to be postponed from February to September. This may be so. The provisions of the statute may not be wise. We are not, however, to discuss the expediency of legislative enactments. The argument ab inconvenienti cannot avail against the express provisions of the statute.
I think the decree of the chancellor should be reversed.-
Lott, Senator.
Upon the default in the payment of the interest in October, 1839, on the mortgage of George G. Roof, referred to in the bill in this cause, the mortgagees, “ the commissioners for loaning certain moneys of the United States of the county of New-York, became seized, Under and by virtue of the 30th section of the act of April, 1837, “ authorizing a loan of certain moneys belonging to the United States, deposited with the state of New-York for safe keeping,” (Laws of 1837, p. 129,) of an absolute and indefeasible estate in fee in the mortgaged lands, to them, their successors and assigns, to the uses in said act mentioned; and the mortgagor and his assigns were utterly foreclosed and barred of all equity of redemption therein, any law, usage, custom or practice in courts of equity to the contrary notwithstanding. But the mortgagor and his assigns were entitled to retain possession of the lands until the first Tuesday of February thereafter, and to redeem the same upon the terms specified in the act. In such an event it is made the duty of the commissioners to expose the mortgaged premises for sale, on the said first Tuesday of February, at public vendue, and if no person shall bid at such sale a sum equal to the amount due on the mortgage for principal and interest, and the expenses of advertisement and the sale, or if ány person to whom the lands shall be struck off shall not pay for the same, then and in every such case the commissioners are to enter into and take possession *442 of the lands, and let the same upon the best terms they can obtain, for the benefit of the state, until the third Tuesday of September then nbxt, when the lands are again to be offered for sale.
In the case under consideration it appears that the commissioners, on exposing the premises in question for sale in February, 1840, made it a part of the terms and conditions of the sale that the purchaser should pay forthwith to the commissioners, at the time of sale, fourteen per cent, of the purchase money, and sign an agreement to comply with the terms, and also pay six dollars for the auctioneer’s charge of selling, and one dollar for the deed; and further, that in case of non-compliance with these terms, the property should be re-sold immediately. At such sale the premises in question were put up, and, after different bid-dings, were struck off to a son of the appellant; and on his noncompliance with the terms of sale, they were put up again and struck off to the defendant Reade, for his co-defendant Hooker, and the question presented for decision is, whether the sale to Reade was valid.
The powers of the commissioners are derived from the statute, and are to be strictly pursued. (See Denning v. Smith, 3 Johns. Ch. Rep. 332, 344.) The statute prescribes the terms and conditions of sale, and the consequence of a non-compliance with them. The commissioners have no discretionary powers. Their duty is pointed oitt, and they can only pursue the course of action marked out for them.
The legislature appear to have contemplated cash sales. They have made no provision for partial payments, but have expressly provided what is to be done if the party to whom the property is struck off shall not pay for the same¡ On the sale in February, the commissioners, in such a case, are to take possession and let the property, and on the second sale they are to purchase.
If the commissioners have the right, as his honor the chancellor insists; to make it a condition of the sale that, if the bidder does not pay the amount of his bid, or so much thereof as they may deem necessary to insure the completion of his purchase, it shall be considered no bid, and that the premises shall be put up and re-sold to some one who wishes to become a real purchaser. *443 it is difficult to conceive, when there are in fact bidders to or beyond the amount due, how the event will happen which authorizes possession to be taken by the commissioners. „
It is evident that the legislature contemplated the possibility of a case where a bidder to whom the premises were struck off would refuse or fail to pay his bid, and have provided, in that event, not for an immediate re-sale, as the commissioners have done, but for possession until a subsequent period, when provision is made for a re-sale and purchase by the state.
It is not for us to inquire how effectual these provisions are to secure the interests of the state or the mortgagor. It is sufficient to know that the legislature have provided no other guards against abuses, and if experience shall prove that the sales in February are defeated by irresponsible persons bidding higher than any one else, and then refusing to pay their bids, I have no doubt that the wisdom of the legislature will devise some remedy for those evils. Until that is done, the evils, if any exist,-must be endured.
As the commissioners in this case have prescribed terms and conditions which were not authorized by the law, I am of opinion that the sale to Reade was void, and that the appellant has a right to redeem on payment to Hooker of the amount due on his mortgage, and what he has paid to the commissioners on their mortgage and for taxes, assessments and other expenses for repairs &c., with his costs of the court below, after deducting what he has received for rents.
The decree of the chancellor ought to be reversed accordingly.
Senators Bartlit, Hard, Putnam, Rhoades, Scott and Wright, also delivered opinions in favor of reversing the decree of the chancellor, concurring substantially in the reasons assigned by Mr. Justice Beardsley and Senators Bockee and Lott.
On the question being put, “Shall this decree be reversed?” the members of the court voted as follows:
*444 For reversal: Mr. Justice Beardsley, and Senators Backus, Bae-tlit, Bockee, Corning, Denniston, Faulkner, Hard, Johnson, Lawrence, Lott, Mitchell, Platt, Putnam, Rhoades, Scott, Smith, Varney, Works and Wright—20.
For affirmance: Senator Jones.
Decree reversed.