Oakley, J.
This action is brought on a'note, dated the 12th of Nov. 1827, drawn by Jethro Mitchell & Co. payable to the defendants, and endorsed by them to the plaintiffs. On the trial the defendants offered to prove, in substance, that in the year 1825, Charles Lawton, in concert with certain persons, a majority of whom, at the next election, became Directors of the City Bank, purchased a large quantity of the stock of the said bank, for the purpose of obtaining the control of the election of its officers. That by means thereof, Lawton and his friends were made directors ; and Lawton was chosen Vice President. That soon afterwards, to prevent Lawton from selling said stock to other persons, who would change the directors and officers of the bank, and in order to keep themselves in office, the said board of directors purchased Lawton’s stock, and the same was transferred tq the bank, or to the cashier in trust for the bank. That the bank agreed to pay Lawton the par value of the stock,- and seven per cent, premium; and Lawton agreed to leave the said bank, and. resign his seat as a director. That it was then further agreed by the persons composing said board of directors, as individuals, and not as a board of directors, and as a part of this arrangement, that they, with the cashier and certain other persons to be made directors, would each give an endorsed note for the sum of three thousand five hundred dollars, to make up the premium on Lawton’s stock : which notes were to be dated on the first of Nov. 1825, and made payable ¿t six months, and were to be discounted by the bank, and the avails applied to the payment of the said premium. That it* was further agreed, that each director, who should give his note, should retain his seat as long as he thought proper; and if he retired, should have the right to name his successor. And further, that if the said stock should be sold, at an advance on its par value, any person, who should so give his note, should receive his share of such advance; but should not be prejudiced by any fall of the stock below its par value.
The defendants further offered to prove, that Jethro Mitchell was one of the directors of the said bank, at the time of the said arrangement, and in pursuance of the same-, gave his note, en* *72 dorsed by one Merrick for the sum of $3500, dated on the first of November aforesaid. That the same was discounted by the plaintiffs, and the avails applied as aforesaid. That when it became due, it was renewed by Mitchell, and indorsed by the defendants: that it was reduced, by sundry payments made by Mitchell, to the amount of the note in question, which was given and indorsed without any new consideration. That the note in question, with all the preceding ones, had always remained in the hands of the plaintiffs as holders, and that they fully knew all the circumstances under which the same had been given. And they further offered to prove, that, at the first or second election of directors, after the giving of the said note, Mitchell was left out of the board, without his consent.
The plaintiffs’ counsel objected to the evidence thus offered, as being insufficient to constitute a defence to the action; and the Judge, being of that opinion, rejected it. To this opinion the defendants’ counsel excepted.
It is now contended, on the part of the defendants, that the facts offered to be proved show, that there was no valid consideration for the note in question, and that the' same is void in the hands of the plaintiffs.
The transaction, out of which the original note (of which the present is a renewal or continuation) took its origin, is supposed to be a violation of the 2d section of the act of the 21st of April, 1825, [sess. 48. ch. 325.] by which it is provided, that it shall not be lawful for the directors of any bank “ to divide, with- “ draw, or in any way pajsJo the stockholders, or any of them, “ any part of the capital stock, or to reduce the same without the “ consent of the Legislatureand that in case of any violation of the provisions of the said section, the directors concerned therein shall be individually liable “ to the said corporation,” “ and to “ the creditors thereof in the event of its dissolution,” to the amount of the capital stock, so withdrawn or reduced, &c.
Assuming that the purchase of the stock of Lawton was a violation of this act, it does not, in my judgment, follow, that this note is void. The act does not declare void, any note or security given under the circumstances prohibited bv it. The directors *73 may be personally liable to the extent provided by the act: but the transaction may still be valid, as to all third parties. The corporation, which is the plaintiff in this case, is clearly to be dist.inguished from the directors, when acting as individuals, or acting in violation of their duty. And under the provisions of the act in question, the distinction is particularly to be observed. The directors are made personally responsible to the corporate body, for their violations of this law. If, therefore, they should be considered as representing, in the purchase of the Lawton stock, the bank itself; and the corporation should thus be made the real actor in the transaction, the legislature would appear to have been guilty of the absurdity of indemnifying the corporate body, by the responsibility of the directors, against the consequences of its own acts.
It is manifest, that the object of the legislature was to protect the corporation; or in other words, the whole body of the stockholders against the acts of the directors. The plaintiffs, therefore, are justly to be considered, in the purchase of the stock in question, as a third party, unconnected with the transaction, and innocent of any violation of law. In this view, they are bona fide holders of the note, on which the suit is founded, having discounted it in the regular course of business, and for a full consideration actually advanced.
It is a well-settled principle, that illegality of consideration, (except in certain cases, arising under the provisions of certain statutes) does not avoid a note in the hands of a bona fide holder without notice. [Chit. on Bills 89.] And it would be doing violence to the justice and good sense of the case, to consider the knowledge of the maker of the note, or of the other directors, of the circumstances attending its inception, as notice to the corporative body, so as to charge it with the consequences of an act, which was in violation of its own rights and interests.
It seems to be quite clear, that the maker of this note could not he permitted, to interpose the present defence to an action against him. He, as one of the directors, in violation of his duty to the corporation, discounted his own note. . He can never be permitted to allege his own illegal act to avoid it. He stood in *74 this transaction in relation to the plaintiffs, in the situation of a trustee. If he violated his duty as such, it would outrage the pr¡nc¡pies 0f common honesty, to permit him to set up that very violation, as the ground of avoiding his own contracts with his cestuy que trust.
Butin truth, in the purchase of the stock from Lawton, the maker of this note did not act merely as a director of the bank. As far as the premium to be paid to Lawton was concerned, (and for a portion of that, the note in question was given,) the directors acted expressly as individuals. Each was to become individually bound for his share of the premium. And although the stock was to be transferred to the bank, or in trust for it, each director had an individual interest in it. If it could be sold for an advance above its par value, such advance was to be divided among the directors, who should pay their proportions of the premium; and such advance might have exceeded the seven per cent, allowed to Lawton.
The directors seem to have proceeded on the.idea, that they had a right to purchase the stock at its par value, on account of the bank; but that they could not appropriate the funds of the bank to pay the premium on it. They therefore agreed to pay that premium themselves, and to rely for an indemnity on the advance of the stock in the market. It is true, that among other objects, they sought to secure themselves in the direction of the bank. Their purpose in this respect was not only illegal, but would have proved nugatory. Upon the principles established by the Supreme Court in the case ex parte Holmes [5 Cowen 434.] the stock in question could not have been voted upon, in any election of directors. But this illegal contract certainly ought not to enable the directors to withhold payment of the money, borrowed by themselves of the bank, with the view of effectuating that intent.
If the note in question is a valid one, as between the plaintiffs and the maker, the defendants having endorsed it, for the accommodation of the maker, are bound by it. In the case of such notes, no consideration ever passes between the endorser and the, maker. And the endorser can never inquire into the *75 consideration, as between the maker and holder, unless the circumstances be such as to make the note void against the maker himself, as in the case of usury.
I am of opinion, therefore, that the judge at the trial .was right in rejecting the evidence offered by the defendants, and that the motion for a new trial must be denied.

Motion for. a new trial denied.

[B. Clark, Atty. for Plffs. W. S. Johnson, Atty. for Defts.]