## The Syracuse City Bank *vs.* Davis.

Statutes are valid which give remedies where none existed before, through defects that would have been fatal, had the legislature not interfered and given a perfect remedy by curing intervening irregularities.

In such cases no rights are interfered with which are vested, in such a sense as to come within the rule that forbids the interference of the legislature.

Where no right has vested in a debtor to a bank to be absolved from the payment of the debt, but there is only wanting a *remedy*, and that is wanting solely by reason of certain irregularities and defects in the organization of the bank, the legislature has the power to correct those irregularities and defects, by an act declaring the bank to be a valid corporation, and to have been duly organized.

The act for the relief of the Syracuse City Bank, passed February 5, 1852, was valid and constitutional.

A statute which does not profess to *create* a banking corporation, but merely remedies defects in the organization of one *already created*, is not a violation of the constitutional prohibition against granting special charters for banking purposes. (*Const. art.* 8, § 4.)

The Syracuse City Bank *v.* Davis.

THIS was an action brought against the defendant as the indorser of a promissory note, which had been discounted by the plaintiff. The cause was tried at the Onondaga circuit, in October, 1852, before Justice Pratt, when a verdict was taken in favor of the plaintiff, for the amount of the note, and interest, subject to the opinion of the court. The facts are stated in the following opinion.

*Geo. F. Comstock*, for the plaintiff.

*H. Denio*, for the defendant.

*By the Court*, GRIDLEY, J. The verdict in this cause was taken subject to the opinion of the court on a case containing the pleadings and evidence produced on the trial. The action was brought against the defendant as the indorser of a promissory note, of which the following is a copy:

"$1000. Eighty-five days after date we promise to pay to the order of H. P. Adams, H. B. Gates and Wm. C. Williams, at the Albany City Bank, one thousand dollars, value received.

Syracuse, July 17, 1851.         H. P. ADAMS & Co."

The note was indorsed by the defendant and others. It appeared that the certificate required by the 16th section of the general banking law, was made and filed in the fall of 1849, and the bank went into operation soon afterwards, and continued to do the ordinary business of such an institution down to the time of the trial. It also appeared that the certificate was subscribed by some persons in the names of firms of which they were members; and that there were substantial defects in the proof and acknowledgments of others, who subscribed the certificate, leaving less than $100,000 (the capital of the bank) properly subscribed, or duly proved and acknowledged. It also was proved that the defendant had done business at the bank; and that the note in question was discounted for H. P. Adams; and had been duly demanded and notice thereof duly served on the defendant.

On the 5th day of February, 1852, an act was passed for the relief of the City Bank, which declared that the said bank should be deemed to be a valid corporation, and to have been duly or-

ganized, notwithstanding any error, informality or insufficiency of the certificate or in the attestation, proof, acknowledgment or recording thereof, &c. The act took effect immediately, and saved the rights of defendants in all suits theretofore commenced.

Several questions of a very interesting character have been discussed by the counsel; but I design only to consider the effect of the act of 1852, passed for the relief of the bank. By its terms, this act, though it took effect immediately, could have no operation on a suit theretofore commenced. The suit in this case was commenced after the passage of the law, and therefore was directly within its operation, if a law thus passed could have any effect on the rights of the parties. It is insisted on the part of the defendant that, when the act was passed, there was no such corporation as the Syracuse City Bank; that the corporation was a creature of the statute; and that the requisites to constitute it a body corporate with the power to sue, were conditions precedent; and not having been complied with, the pretended organization of the institution was a nullity. It has generally been understood to be the rule in this state, that rights absolutely vested cannot be affected or subverted by the legislative authority. (*Dash* v. *Van Kleeck*, 7 *John.* 477.) This rule, however, is laid down with some qualification by Chancellor Kent in his Commentaries. Speaking of this principle, he says, "But this doctrine is not understood to apply to remedial statutes which may be of a retrospective character, provided they do not impair contracts, or disturb absolutely vested rights; and only go to confirm rights already existing; and are in furtherance of the remedy, by curing defects, and adding to the means of enforcing existing obligations. Such statutes have been held valid when clearly just and reasonable and conducive to the general welfare, even though they might operate in a degree on existing rights; as a statute to confirm marriages defectively celebrated; or a sale of lands defectively made, to pay debts of a testator or intestate. The legal rights affected in those cases by the statutes were deemed *to have been vested subject to the equity existing against them*, and which the statutes recognized and enforced." In the case under consideration, the objection is not

The Syracuse City Bank *v*. Davis.

that the bank had not a sound capital, and has not practically performed all the duties of such an institution; it is not that the bank did not furnish the money on the note, which formed a perfect consideration in law and equity; but it is founded on the technical ground, that the proof and acknowledgment of a part of the subscribers to the certificate was defective. The consequence of these defects is said to be, a fatal bar to any action brought in the name of the corporation; an utter incapacity of the bank to sue, or to do any other acts which presuppose an existing corporation. But it is perceived that this alleged *incapacity* exists solely in consequence of certain technical irregularities in the organization of the company. We think they are precisely such defects as are cured by a remedial statute, under the principle laid down by Chancellor Kent. The marriages defectively celebrated, and the surrogate's sales defectively made, would have been void, and the courts would have been bound to hold them void, in the absence of any remedial statute curing those defects. In *Underwood* v. *Lilly*, (10 *Serg. & Rawle*, 101,) a judgment entered on the *first*, instead of the *third* day of January, and void for that reason, was held to be cured by the act of February, 1822. In the case of *Tate* v. *Stooltzfoot*, (16 *Serg. & Rawle*, 35,) it was decided that an omission in the certificate of acknowledgment of a married woman to a deed conveying her estate in lands, was remedied by an act, passed for that purpose, after the death of the wife; and after the lands had descended, and after the court had decided that the acknowledgment was inoperative to pass the lands. In the face of all these facts the supreme court of Pennsylvania held that the act in question, being remedial in its nature, cured the defective acknowledgment, so that the lands passed and the grantees took the title under it, although without the act no title would have passed by the deed, to the grantee.

In *Hepburn* v. *Cutts*, (7 *Watts*, 300,) the supreme court of Pennsylvania lay down the doctrine that it is competent for the legislature to pass acts retrospective in their character, notwithstanding their operation may be to affect pending suits; and to give to a party rights he did not before possess; or to modify an

existing remedy; or to remove an existing impediment in the way of a recovery by legal proceedings, provided they do *not violate any constitutional prohibitions*. These cases and many more that might be cited, hold that acts are valid which give remedies where none existed before, through defects that would have been fatal, had the legislature not interfered and given a perfect remedy by curing intervening irregularities. In all the cases the language of the courts is that no rights are interfered with, which are vested in such a sense as to come within the rule that forbids the interference of the legislature. (*See also* 16 *Mass.* 258.) In that case the counsel enumerated the instances in which the legislature had interfered and was constantly interfering to cure defects, by declaring the judgments of justices valid; and the acts of overseers of the poor, constables, collectors and numerous other officers legal; which, without such remedial acts, would be void. Our own statute book is also full of such acts, and no one has ever questioned the power of the legislature to pass such laws. See *Butler* v. *Palmer*, (1 *Hill*, 325,) as to the power of the legislature to change the existing law when rights would seem to be vested in a certain sense.

In the case of *Cochran* v. *Van Surlay*, (20 *Wend.* 365,) Senator Verplanck argues in favor of the unlimited power of the legislature to pass any laws which do not violate any of the prohibitions of the constitution, either of our own state, or that of the United States. And in *Burch* v. *Newbury*, a question was decided in the court of appeals, by which Burch, after the cause was decided against him, and the execution issued on the judgment had been satisfied, and all right to bring error or to appeal had been lost by his omission to take the requisite steps in season, was allowed to appeal under a law passed after his rights were extinguished under the existing laws.

In the case now before the court we are not under the necessity of invoking a principle that strikes at vested rights which have hitherto been held sacred in our courts with the above exceptions. No right had vested in the defendant to be absolved from the payment of the money which the bank had advanced, and which he had agreed to pay on certain conditions, which had

happened.   There was only wanting a *remedy ;* and the remedy was wanting solely by reason of certain irregularities and defects in the organization of the bank.   These irregularities and defects, the legislature had the power, as we have seen, to provide a remedy for, as they assumed to do by the act of February, 1852.

It is scarcely necessary to notice the objection that this act of 1852, violates the constitution by *creating* a corporation by a special charter.   (*Constitution of* 1846, *art.* 8, § 4.)   The act does not profess to *create* a corporation; it only remedies defects in the organization of one *already created.*   The institution may be said to have the power and the rights of a bank doing business *de facto* ;  while its rights were imperfect, *de jure.* The statute in question was of a class of acts, entitled to be most liberally construed, for the advancement of the public welfare and the protection of individual rights.   The application of the rule above laid down, in relation to remedial statutes, is also most benign in its operation to prevent the injustice that would otherwise prevail by giving effect to technical defects and irregularities, and making them remediless.   On the whole we have no reasonable doubt of the validity of the act, and of its application to the case under consideration.

Judgment for the plaintiff.

[ONEIDA GENERAL TERM, January 3, 1853.   *Gridley, Pratt, W. F. Allen* and *Hubbard*, Justices.]