Davies, J.
This is an action of ejectment brought to recover two village lots in the town and village of Ithaca. The wife of the plaintiff claims the premises as the heir-at-law of her father, Stephen B. Munn, junior, who died October 13, .1840, intestate, being the owner of and seised in fee of said lots: that he left him surviving the wife of the plaintiff and a son, his heirs-at-law: that the said son had since deceased, leaving a son his only heir-at-law. The defendant was in possession óf the premises, and claimed to hold the same by title derived as follows:
*46 On the 31st of October, 1840, the surrogate of the bounty of Tompkins .duly appointed Stephen B. Munn, of the city of New York, and Horace Mack and Jeremiah S. Tourtellot, of Ithaca, administrators, &c., of Stephen B. Munn, Jun., deceased. A bond was given by the said administrators in the usual form with sureties, and approved by and filed with the surrogate, November 11, 1840, and on the same day, letters, in the usual form, were duly issued by said surrogate to the said administrators. The inventory of the personal estate of said deceased was made and appraised, and said appraisement duly verified and filed in the office of said surrogate on the 3d day of December, 1840, by which it appeared that said personal estate amounted to the sum of $26,674.42. On the 5th of June, 1841,. the said administrators presented their petition to said surrogate, duly verified, setting forth that they had filed an inventory of the personal estate of said deceased, and had discovered that the sum was insufficient to pay his debts. That the outstanding debts of the deceased, due and unpaid, as near as the same could be ascertained, amounted to about the sum of $60,000. That said deceased died seised of certain parcels of real estate, among others that described in the complaint in this action: that his heirs-at-law, the wife of the plaintiff, and his said sons, were minors under the age of twenty-one years. The petitioners prayed that they might have. authority granted to them, pursuant to the Revised Statutes, to mortgage, lease or sell so much of the real estate of the deceased as should be necessary to pay his debts. On the seventh of June, 1841, an order was made by the surrogate appointing a guardian ad litem for the said infants, for the purpose of appearing for and taking care of their interest in said proceedings; and said order recited, that due notice of the application for the appointment of said guardian had been served on said minors. A disinterested freeholder was thereupon appointed to take charge of the interest of said infants. Letters of guardianship were issued to said guardian, by said surrogate, on the 7th of June, 1841, reciting all said proceedings and duly appointing him guardian for the purpose aforesaid. On the 15th June, 1841, *47 the said surrogate made an order, reciting that it had been made satisfactorily to appear to him that' the personal estate of the said deceased was insufficient to pay his debts, and requiring all persons interested in the estate of said deceased to show cause before him, on the 26th of July then next, why authority should not be granted to said administrators to mortgage, lease or sell so much of the real estate of the deceased as should be sufficient to pay his debts. Notice of such order was duly published, in a newspaper printed in said county of Tompkins, for four .weeks, commencing on the 26th of June, 1841. On the 26th of July, Mack and Tourtellot made and filed with said surrogate an affidavit setting forth that the whole personal property of said deceased which had come to their hands as administrators would amount, so far as they could ascertain the same, to about the sum of $11,600; that part of the sum had been applied to the payment of the debts of the deceased, and that after the whole is applied, there would remain due and outstanding debts to the amount of about $29,000, without including two mortgages of about the sum of $5,550, and they state that money could not be advantageously raised by a mortgage or lease of said real estate, but that in their opinion the whole of the real estate of said deceased will have to be sold-to pay his debts. A bond for the payment of the proceeds of the sale of said real estate, in the penal sum of $40,000, was duly executed by' said administrators and a surety, and filed with said surrogate on the 19th August, 1841.
On the 26th July, 1841, the surrogate made an order or decree, declaring that on satisfactory proof he adjudged and decreed that the said deceased was indebted to the several persons therein named, in the sums set opposite to their respective names, which included a debt due to the said Stephen B. Munn, one of said administrators, the total of which amounted to the sum of $35,213.41. On the 19th of August, 1841, the said surrogate made an order for the sale of the real estate of the said deceased, for the payment of his debts, which recited the above-mentioned proceedings and the facts aforesaid. Due notice of the time and place of the said sale of said real estate *48 was given and published, and a report of the sale was made by the administrators' and duly verified, setting forth that the premises described in the complaint in this action were duly sold at public vendue and bid off by William H. Munn for the sum of $5,850, that being the greatest sum that could be obtained therefor, and that due notice was given of such sale, and that it was in all respects conducted fairly and bona fide. On the 20th of November, 1841, an order was made by the surrogate confirming said sale, and the administrators, by deed dated December 1, 1841, and recorded March 25, 1844, conveyeá - said premises to the said purchaser. On the 25th of January, 1842, the said administrators filed with the surrogate an account showing the application of the proceeds of said sale. William H.. Munn and wife, by deed of quit-claim, conveyed said premises to Stephen B. Munn. This deed was dated October 7, 1842, and recorded November 17, 1842. Stephen B. Munn and wife, by a warranty deed, dated August 1, 1843, and recorded August 21, 1844, for the consideration of $6,500, granted and conveyed said premises-to one Nicoll Halsey, and on the 1st of June, 1848, the said Nicoll Halsey and wife conveyed the same premises to the defendant, Robert Halsey. The defendant also produced and proved the record of.a judgment in the Supreme Court, wherein the said administrators were plaintiffs, and the plaintiffs in this action were the defendants, which action was commenced on the 18th day of October, 1850, for the purpose of affirming the proceedings before the surrogate. The- complaint set forth the proceedings before the surrogate, and averred that "the said Stephen B. Munn 2d had died insolvent, leaving real and personal estate in the aggregate, at its fair value, amounting to about the sum of $20,150, and owing bona fide debts to the amount of at least $42,936, over and above incumbrances by mortgage, as settled and allowed by the surrogate. It avers the appointment of the guardian for the said infants, upon the proceedings before said ¡surrogate, to take charge of their interests in the same, and also avers the due publication of the order to show cause, made by said surrogate, for leave to mortgage, lease or sell said real *49 estate, but that no proof could be found on file with said surrogate of the service of said notice upon said guardian, but the plaintiffs aver that, in point of fact, said notice was duly-served upon said guardian. After setting forth fully the proceedings before the surrogate, the sale of said premises, and the conveyances above mentioned, the plaintiffs state in their complaint that Stephen B. Munn, the third son and heir of said Stephen B. Munn, 2d, deceased, after he attained full age, and on the 12th of ¡November, 1849, by his deed of confirmation ■and release, duly executed and acknowledged, fully ratified and confirmed all and singular the proceedings had before' the said surrogate. ,The complaint states that doubts had been suggested as to the regularity of said proceedings, particularly that it was omitted, in the petition presented to the surrogate for authority to sell said real estate, to state the amount of the personal property which had come to the hands of said administrators, and that there was no proof of service of the order to show cause upon the guardian of said infants, and said plaintiffs asked the aid of the court to ratify said sale. It was also averred that Forbes and his wife were ready and willing to •ratify and confirm the same, but that Mrs. Forbes, being still an infant under the age of twenty-one years, could execute no valid conveyance, and the plaintiffs prayed that, by an order 'or decree of said court, the said proceedings might be fully ratified and confirmed, and that said Forbes and his wife might be perpetually barred from setting up any claim or title to said premises. On application to the Supreme Court by Forbes and his wife, Forbes was duly appointed the guardian ad litem, of his wife in that suit.
An answer was put in by Forbes on his own behalf, and as guardian of his wife, admitting all the allegatiqns of the complaint, and submitting to such decree as the court might think proper to make in the premises, and the cause was regularly brought to a hearing on complaint and answers, and a notice to the defendants, and a judgment or decree was made therein on the 26th of ¡November, 1850, at a special term of said court, wherein and whereby it was ordered, adjudged and *50 decreed, that the sales of the said real estate, made by order of the said surrogate, and all and singular the proceedings had before him, and the several deeds and conveyances thereof and the title acquired thereby, were fully ratified and confirmed. And it was further ordered that the defendants therein and each of them, and their heirs and all claiming under them, be perpetually barred from claiming, asserting, or setting up any title, claim or demand of, in or to said premises or any part thereof.
The plaintiffs raised the following objections to the matters urged and put in evidence to sustain the defence:
■ 1st. That the surrogate had acquired no jurisdiction in the proceedings to sell said real estate, for the reason that the petition was not accompanied with and did not contain an account of the personal estate of said deceased, nor of the debts against him, nor the names of his creditors, nor the consideration of the debts against him.
2d. That there was no evidence that ten days’ notice of the appointment of a guardian ad litem had been served on said minors.
3d. That it appeared by said judgment record that, at the time such guardian was appointed, the said Mary B. Forbes was under the age of fourteen years, and there was no evidence of the service of notice of such appointment on some person of suitable age and discretion, having the care and custody of said infant.
4th. That there was no evidence of the service of the order to show cause on the minors.
5th. That there was no evidence of the service of said order on the guardian.
6th. That there was not sufficient evidence of the publication of the order to show- cause.
7th. That the affidavit of Mack and Tourtellet was inadmissible, having no effect to remedy’ the previous defects and insufficiency; and it was of itself insufficient, as it only accounts for personal property which came to the hands of said two administrators.
*51 8th. That there was. no sufficient proof of the publication of the notice of sale.
9th. That the judgment in the- Supreme Court in favor of the said administrators, against these plaintiffs, had no effect to affirm and render valid the proceedings before the surrogate, 1st, because the record contained no evidence of the appointment of a guardian for the said Mary B. Forbes; 2d, that the Supreme Court had no jurisdiction to render such a judgment; 3d, that it could not operate as an estoppel against the said Mary B. Forbes, she being an infant.
The said justice then decided that, in consequence of the introduction of the judgment of the Supreme Court, it became unnecessary for him to rule or decide the several points raised as to the proceedings before the surrogate, and therefore declined so doing, to which the plaintiff’s counsel excepted.
He further decided that the plaintiff’s counsel could not, in this form, take advantage of the want of an appointment of a guardian ad litem to said suit for said infant defendant, Mary B. Forbes; to which decision the plaintiff’s counsel also excepted.
The said justice also held and -decided that the said judgment in the Supreme Court must be regarded ás affirming and rendering valid the proceedings before said surrogate, and that the jurisdiction of said Supreme Court, in rendering said judgment, could not be questioned in this form; to which the plaintiff’s counsel also excepted.
The said justice further decided that the said Mary B. Forbes was estopped by said judgment in the Supreme Court, from questioning the validity of the proceedings before the surrogate; to which decision the plaintiff’s counsel also excepted.
The plaintiffs then offered to prove that William H. Munn bid off the premises in question as the agent and for the benefit of the said Stephen B. Munn, which offer was overruled by the said justice, and the plaintiffs also excepted.
The jury, under the direction of the said justice, found a verdict for the defendant, and directed the said exceptions in *52 the first instance to be heard at the general term, and which, on hearing the same, rendered judgment for the defendant, from which the plaintiffs appeal to this court.
It is objected, in the first place, to the title acquired by the defendant under the proceedings for the sale of the real estate of Stephen B. Munn,-2d, that the surrogate acquired no jurisdiction in the proceedings to authorize said sale, for the reason that the petition was not accompanied with and did not contain an account of the personal estate of the said deceased nor of the debts against him, nor the names of his creditors, nor the consideration of the debts against him.
An examination of the provisions of the Revised Statutes will show that no such requirements are therein contained. I apprehend that to give the surrogate jurisdiction, it must appear to him that administrators have been duly appointed ; that they have made and filed an inventory of the personal estate of the deceased, appraised and verified according to law; that such inventory may be regarded as the basis of their subsequent action, and is to be considered in all subsequent proceedings before the surrogate, at least until the contrary affirmatively appears, to be a true and perfect inventory of all the goods, chattels and credits of the intestate. Such personal property is to be sold, if necessary, to pay the debts of the deceased. (2 R. S., p. 87, § 25.) The amount of the personal property, therefore, which comes to the hands of the administrators, will be assumed to be the amount of the inventory as returned and filed. And in the settlement of their account the administrators are to be charged with the amount of such inventory, and all increase or income thereupon, and also all personal property of the intestate which may be proven to have, subsequently to the making of the inventory,- come to their hands. They are, on such final accounting, to be credited with all just and legal payments made by them as such administrators, and with any losses happening on the sales thereof, when such sales have.been made in good faith. When, therefore, this inventory was filed in the case of this intestate, showing the amount of his personal estate to be $26,- *53 674.42, the law ascertained and adjudged, in the absence of any proof to the contrary, that that amount of personal property came to the hands of the present administrators, and it also assumed, what it made it their duty to do, that the same had been applied to the payment of the debts of the intestate; and in the case of administrators, it would be a matter of supererogation to repeat in the petition, what must appear by the records of the surrogate’s court, the amount of personal property which came to their hands, and the application thereof. And in case of administrators, but one application is to be made, that is, the payment of debts. With executors it is different; and many reasons might be suggested why they ought to be required to set forth the amount of personal property coming to their hands, and the application thereof, before they could have an order to sell the real estate of their testator. , As preliminary to the application for leave to sell the real estate of their intestate, the administrators must discover that the personal property of their intestate is insufficient to pay his debts. When such discovery is made, the statute authorizes them to apply to the surrogate for authority to sell so much of the real estate as may be necessary to pay such debts. Such application may be by petition, and the statutes declare what it shall contain and be duly verified. The petition in the present case states the fact of the making and filing the inventory, and refers to the same with sufficient certainty to have it regarded as a part of the application. Papers on file in the surrogate’s office were held to be sufficient, in conjunction with the petition, although not referred to in it as sufficient with the petition, to give the surrogate jurisdiction, in a similar application in Jackson v. Crawfords (10 Wend., 533). The amount of the personal estate, therefore, appeared. Its application to the payment of the debts was made by law, and, until the contrary appeared, the surrogate was right in assuming that it had been so applied. The fact that the personal estate set forth in the inventory had been discovered by the administrators to be insufficient to pay the debts of the intestate, is also distinctly stated. The debts outstanding of ■ *54 the intestate, due and unpaid, as far as the same could be ascertained by the administrators, were stated to amount to about the sum of $60,000, or, in other words, about the sum of $30,-000 over and above the total amount of the personal estate of the intestate. It also set out the real estate of the intestate, and the names and ages of the heirs of the intestate, and was duly verified by the oath of the petitioners. I am unable to see why the surrogate had not before him all the facts needful to give him jurisdiction, as all was made to appear which the provisions of the statute required. (2 R. S., p. 100, § 2.) The Revised Laws of 1813 (vol. 1, § 23), required the administrator, when he should discover or suspect that the personal estate of his intestate was insufficient to pay his debts, as soon as conveniently might be, to. make a just and true account of ;the said personal estate and debts, as far as he could discover the same, and deliver said account to the surrogate and request his aid in the premises. Such account is not required by the Revised Statutes. In Jackson v. Robinson (4 Wend., 436), the Supreme Court held that the surrogate acquired jurisdiction on the suggestion of the administrator of a deficiency of assets, and on receiving an account of the personal estate and debts of the deceased. In this case it does not appear that any other account was presented to the surrogate than the. statement .contained in the petition of the administrator, “that the petitioner had made an. account of the personal estate and of the debts of the deceased, and that such estate was insufficient to pay his debts.” And it was objected there that it did not appear, except by the recital in the order, that the personal property had been applied to the payment of debts, but the objection was overruled. The ruling in this case was approved of in that of Jackson v. Irwin (10 Wend., 441); in Jackson v. Crawford (supra); and in this court, in Sheldon v. Wright (1 Seld., 497). The first objection, therefore, is wholly untenable. The Revised Statutes do not require, as the Revised Laws did, that the petition should be accompanied with an account of the personal estate of the intestate, or an account of his debts, nor does either require an account of the *55 names of Ms creditors or of the consideration of the debts against him. Neither do the Revised Statutes require that the petition should contain an account of the personal estate of the intestate, or of the debts against him, or of the names of his creditors, or of the consideration of the debts due by him. The particulars required by section 2 of the statute already referred to, viz., that it shall show the amount of the personal property of the intestate, the application thereof, and the debts outstanding as far as could be ascertained, it is believed that it has already been shown, are stated with sufficient certainty.
The onus of proving the matters stated in the second, third, fourth, fifth, sixth, seventh and eighth objections, since the passage of the act of March 23, 1850 (Laws of 1850, ch. 82, 117), rested clearly upon the party seeking to impeach those proceedings, and the sale and conveyance made in pursuance of them.
By the provisions of section first of- that act, all sales made by order of the surrogate, of the real estate of testators or in-testates, for the payment of their debts, are to be deemed and held to be made by a court having original general jurisdiction ; and the said provisions were to apply as well to sales theretofore as thereafter to be made. TMs act but declares that surrogates’* courts, acting in the ordering of such sales, are to be deemed courts of general jurisdiction, and it follows that all intendments, as to the regularity of their proceedings, and their jurisdiction in the premises, are to be the same as if they were courts of original general jurisdiction. The cases of The Syracuse City Bank v. Davis (16 Barb., 190), and of Chandler v. Northrop (24 id., 129), and the cases referred to in the opinions therein, fully sustain, in my judgment, the constitutionality of this law and its application to the present case. This statute made it incumbent upon the plaintiffs to show affirmatively the several matters, which they allege the defendant had not shown by sufficient evidence to exist, and ■ until these matters thus distinctly appear, the regularity of the proceedings will be assumed. Several of these objections are hypothetical and not warranted by .any facts appearing in *56 the case. There can be no doubt, I think, that the surrogate properly received the affidavit of Mack and Tourtellot on the return of the order to show cause why the real estate should not be sold. Upon such hearing, the statute contemplates an attendance of parties interested, an examination of witnesses, and if a question of fact shall arise, an issue may be awarded to try the same. The surrogate, upon the hearing, is to adjudge and determine the debts against the intestate, what are valid and subsisting. Before he can make an order for the sale of the real estate, he is to be satisfied, upon due examination, that the administrators making the application have complied with the provisions of law: that the debts, for the satisfying of which it is proposed to sell said real estate, are justly due and owing; and lastly, that the personal estate of the deceased is insufficient for the payment of such debts, and that the whole of such estate, which could have been applied, to the payment of such debts, has been so applied. Upon such examination, the administrators were competent and proper witnesses, and the matters so testified to by them were properly reduced to writing and remain of record in the surrogate’s office. It is of no importance that he did not deem it necessary to examine the third administrator. He was to be satisfied, and if the testimony taken satisfied his mind, his judgment thereon cannot,' in this action, be reviewed. He acted judicially, and the only remedy was to appeal, if he acted erroneously. (Jenkins v. Robinson, and Jackson v. Crawfords, supra.)
I am unable to arrive at the conclusion that the defendant’s case is strengthened by the judgment in the Supreme Court in favor of these administrators against these present plaintiffs. The defendant in this action was not a party to that suit, and in no way concluded or affected by anything done ' therein. He is not estopped from setting up any rights he might otherwise have by any adjudication therein, and consequently he cannot claim that the defendants therein, as between him and .them, are estopped from setting up or claiming any of their rights, by reason of anything adjudicated in that suit. *57 The defendant has parted with no property, or done any act or thing, by reason of or on the faith of anything done or omitted to be done, by these present defendants in that action. The essential element of an estoppel is therefore wanting. Again, the plaintiffs in that action, the administrators, had no interest in that controversy and had no right to call upon the defendants therein, for the relief prayed for. Stephen B. Munn, individually, might perhaps have had a cause of action to restrain Mr. and Mrs. Forbes from setting up any claim to said premises, on the' ground that he had warranted the title thereto, and that the consideration paid for the same had been applied to the discharge of the debts of their ancestor, and that he was still largely indebted to him. An equity might perhaps thus have been worked out on behalf of Stephen B. Munn, individually, but certainly none existed on the part or on behalf of the administrators. The judgment record in that action should, therefore, have been excluded. It was res inter alios acta.
There remains to be considered the offer made by the plaintiffs to show that William H. Munn bid off the premises in question as the agent, and for the benefit, of the said Stephen B. Munn, and which evidence was excluded.
It is now well settled in this State, that a guardian, trustee or other person, standing in the relation of a fiduciary capacity, cannot deal with or purchase the property, in reference to which he holds that relation. (Gardner v. Ogden, 22 N. Y., 327.) The usual and ordinary right and remedy of the cestui que trust is, to affirm the sale and claim its enhanced value, or to hold the fraudulent trustee to the sale. He has his election within a reasonable time to do either. The sale is not therefore void, but voidable only at the election of the cestui que trust. But in reference to sales of the character now under consideration, we have an emphatic and clear expression of the will of the legislature, and which I see no way of overcoming in the present case. (2 R. S., p. 104, § 27.) This section declares, in reference to sales by executors or administrators of the real estate of testators or intestates, directed to be made *58 by a surrogate for the payment of their debts, that such executors or administrators making the sale shall not directly or indirectly purchase, ór be interested in the purchase of, any part of the real estate so sold. And it further declares that all sales made contrary to the provisions of that section shall be void. It was not necessary to bring the case within the mischiefs intended to be presented by this prohibition, that all of the administrators should directly or indirectly purchase at the sale, or be interested in- the purchase. It is equally within the statute, if either of the administrators making the sale should purchase, or be interested therein. A moment’s consideration will show the importance of maintaining, in its integrity, the inhibitiol- to purchase, or be interested in the purchase, contained in this section, on those who initiate and conduct sales of this character, or any of them. The owner of the estate has departed, and others represent him, who are charged to protect those interested in his estate, as creditors or heirs.
In the case of executors, he has selected those in whom he confides, and upon whom the law imposes a duty- of fidelity and impartiality. In the event of administrators being appointed, certain classes from which the selection is to be made are designated by law, and when selected the same duty is imposed upon them. The characters of purchaser and seller are utterly incompatible in such cases, and the law has wisely interposed its mandate, that they, shall not co-exist. No man should thus be tempted, or be permitted thus to be tempted. Infants are peculiarly the objects of the watchful care and protection of the courts, and they cannot permit a salutary provision of the statute,- especially made to secure their interests, to be disregarded. If an executor or administrator was permitted, directly or indirectly, to purchase at a sale, initiated and conducted and made by him, or to be interested in any such purchase, it is obvious that the temptations would be frequent to cause such sales to be made, and at inauspicious periods, and under circumstances when the lowest price would be obtained therefor, in violation of his duty, would *59 be strong, and the law has imposed a barrier to their existence. The characters of seller and buyer are in direct conflict, and cannot be exercised by the same person. “Mnptor emit quam mínimo potest, venditor vendit quam maximo potest.” The statute has, therefore, said that all such sales are void, and consequently no title passed thereby. The title remains in the original owners, as though the sale had never been made, and in this case, on the decease of the ancestor, his real estate, sold and purchased in violation of the statute, descended to his heirs-at-law, of whom the present plaintiff, Mrs. Forbes, is one. Her title to one undivided half of said premises has not been legally divested. It descended to her, subject to the right to sell the same for the payment of the debts of her ancestor. And a sale lawfully made would have divested her title, and vested the same in the purchaser at such sale. If the facts sought to be proved by the offer made at the trial and now under consideration were established, the said sale was void, and no title passed thereby. It seems to me, therefore, clear that if these facts be established, the administrator, Stephen B. Munn, acquired no title to the premises in question, by reason of the sale, initiated, conducted and made by him, in conjunction with his co-administrators, and that consequently he had none to convey, and the wife of the plaintiff has the same title to the premises as she would have had if said sale had never been attempted to be made." I think the learned justice erred in excluding this evidence, and that there should be a new trial had, with costs to abide the event.
All the judges were for reversal, on the ground stated as the conclusion of the opinion; Denio, Ch. J., and Smith, J., expressed concurrence with the opinion in respect to the act of 1850; Sutherland and Allen, Js., were of a contrary opinion; and the other judges did not express themselves upon that point.
Judgment reversed, and new trial ordered.