Brady, J.
It is conceded that, unless the advances constituting the counter-claim were validated by an act of the legislature, they form no barrier to the success of the plaintiff. They were made to meet existing emergencies, and, under the circumstances, correctly stated by the learned justice presiding in the court below.
The objections are chiefly that the legislature had not the power to legalize the claims, but, if they had, the statute does not embrace them, inasmuch as the emergencies contemplated and considered when the statute was enacted, and of which the court can take judicial notice, were entirely different, and did not include them. And, if it did, the advances were fraudulently made, and by the complicity of some of the defendant’s directors, and, therefore, have no vitality, and cannot be enforced. The plaintiff’s points are elaborate, and, perhaps, more than exhaustive, but they have been answered substantially and successfully by the-opinion delivered in the court below, and what may be done here will be little more than a restatement of the law. It must be remarked in limine that the power of the legislature-to legalize the claims is so well settled that a discussion of the question would not be justifiable. Town of Guilford v. Supervisors, etc., 13 N. Y., 143; Brewster v. Syracuse, 19 id. 116; People v. Mitchell, 35 id. 551; Brown v. Mayor, 63 id. 239, 244; Darlington v. Mayor, 31 id. 164; Dillon’s Municipal Corp’n (3d ed.), §§ 79, 80, 84; Cooley on Const. Lim. (4th ed.), 461, 467; Syracuse Bank v. Davis, 16 Barb., 188. Indeed, in the various proceedings relative to the claims, no suggestion was indulged in that any doubt existed on that subject, although the statute was necessarily the prominent, element. The People ex rel. Tenth Nat. Bank v. Green, in special and general terms of this court, 5 Sup. Ct. (T. & C.), 376; People ex rel. Tenth Nat. Bank v. Board of Apportionment, 5 Sup. Ct. (T. &. C.), 382; 64 N. Y. 627.
Justice Barrett asserted the validity of the act, but imposed as a condition that the claims should be shown to be bona fide. People ex rel. Tenth Nat. Bank v. Green, supra. And this view was sustained on appeal from his decision.
If the statute had not been considered as expressive of lawful legislative power no further proceeding could have been had, inasmuch as there was no legal claim otherwise- *275 existing. Any attempted enforcement of it would then have been arrested in limine. The statute, by section 2, chapter 9, Laws of 1872, was broad enough to comprehend all advances to or for the use of any of the departments or commissioners of the city or county of New York without reference to particular or special obligations arising from any complications, embarrassments or exigencies of the city government.
The advances herein considered were made to and for the use of the commissioners of the county court house, and this was either a city or county commission, it matters not which, within the purview of the statute. The officers of the defendant’s bank, so far ps they were bound to do so, made inquiries from the comptroller and the mayor as to the advances asked for, and on being assured made them. They were not bound to go beyond these sources of information. They had the right to rely upon them, and the reliance was correct as to the propriety of the expenditures covered by the advances claimed herein except as to the amount asked, which exceeded the actual indebtedness incurred by $40,000 and upwards occasioned by fraudulent enlargement of the bills rendered by the commissioners. When, therefore, this court held the statute of 1872 applicable and the' defendant’s claim enforceable if bona fide it went to the verge of authority. The defendant was dealing with the authorized agents or representatives of the city, namely, the comptroller, the mayor and the county court house commissioners, whose duty it was to know whether the advances should be allowed. Indeed, the advances made were subsequently confirmed by a payment on account of $200,000.
It is true that to some extent the amount of actual expenditures by the county court house commission was fraudulently stated by the commissioners, but the burden must fall upon the city and not upon the persons dealing with its authorized officers. The incident mentioned was one of a gigantic conspiracy against the city treasury, which would not ordinarily be suspected, and could not well be known until disclosed by some co-worker or confidant, and was in fact kept a secret until revealed in that mode. It may be assumed as proved, that Ingersoll, who represented the court house commission and who was a director of the defendant bank, knew of the falsity of the amounts of the bills for which the advances were sought, and attended the meetings of the bank directors having such knowledge, but he was the only one of the directors having such knowledge, whose attendance was proven. This knowledge considered with relation to the transaction, was not sufficient to involve the defendant's bank and invalidate its claim for *276 Such advances. The learned judge in the court below has satisfactorily disposed of that question on principle and authority. The acts of a director and his knowledge are only destructive of the bank’s interest when he acts on its behalf. The element of agency is necessary. Here Ingersoll was acting for the city and the court house commission and aiding in obtaining money for the uses of the commission, in perfecting a building, of which he and his associates had the superintendence, and it was used for that purpose, although not entirely, on account of the fraud mentioned. The cases cited by the learned justice in the court below sustains this doctrine as shown by him.
It is not deemed essential to continue the discussion of this appeal further. The propositions mentioned embrace the major and merge the minor and render it incumbent upon this court for the reasons herein stated, and those given by Mr. Justice Patterson, to affirm the judgment.
Ordered accordingly with costs.
Van Brunt, P. J., and Daniels, J., concur.
The following is the opinion of Judge Patterson, in court below:
Patterson, J.
It is conceded that the plaintiff is entitled to recover in this action the sum of $66,301.36, being the interest on balances of moneys of the city and county of New York deposited with the defendant during the periods of time mentioned in the complaint. The contest between the parties arises upon the counter-claim. The defendant seeks to recover a balance of moneys advanced by it in the year 1871, to the commissioners of the county court house in the city of New York. It is clearly proven that the defendant did at various times make such advances, and that, with interest and after deducting what is due the plaintiff on its cause of action, they now amount to the sum of $358,849.23.
The circumstances under which the moneys were advanced appear from the evidence to have been as follows: The appropriations for the support of the various departments of the government of the city of New York for the year
1871 were exhausted several months before .the end of that year, and various banks, insurance companies and trust companies, to relieve the city of embarrassment, made advances to the fire department, the health department, the department of public works and that of charities and corrections, to enable them to carry on the business with which they were severally charged by law. The defendant bank made certain advances during the period referred to, to the commissioners of the court house, under a state of facts which will be hereinafter specially referred to. The moneys thus advanced to the various departments were borrowed by them, and the lenders took as security assignments or transfers of particular claims, to pay which the moneys were thus borrowed. There was no authority whatever in law for these transactions; but in the year 1872 the legislature of the state of New York passed an act which authorized the repayment of all advances made by any bank, trust company or insurance company to or for the use of any of the departments or commissioners of the city or county of New York. Chap. 9, Laws, 1872, § 2.
The effect of this legislation was elaborately discussed on the trial of this action; but construction of the law referred to (and of an act amendatory thereof—chap. 29, Laws 1872) has already been given by this court which has settled the application thereof to the particular claim now urged by the defendant. It was held by Mr. Justice Barrett, at the special term, that the legislation above mentioned legalized the claim of the Tenth National Bank, and that the court house commission, was a county commission, but he left *277 open the question of the advances having been made in good faith. This decision was affirmed at the general term, the court remarking that the learned justice in his opinion “states very clearly the statutes applicable to this case and their true construction.”
I must therefore accept the interpretation of these acts of 1872, as it has been given by the appellate branch of this court, and the effect of it is, that the advances made by the Tenth National Bank to the court house commission, although originally made without authority on the part of the commissioners to borrow the money and bind the county, were subsequently given by the legislature the status of a lawful demand against the county, provided such advances were made in good faith by the bank. It is admitted that if the demand is enforceeble it is one now existing against the plaintiff by reason of the terms of the second section of the act of April 80,1874, by which the county of New York and the corporation of the city of New York were consolidated under one municipal government.
It is, however, claimed by one of the learned counsel representing the city, that notwithstanding the construction given to the legislation of 1872, the defendant cannot recover its claim in an action. This contention is expressly overruled by a decision of the court of appeals in passing upon the identical claim now before the court. When that claim was urged upon mandamus proceedings the court refused relief on the ground that there were affidavits assailing its validity, and as there was not, therefore, a clear legal right to recover, the writ could not issue; but, it also held that if the bank had a valid claim by virtue of chapter 304 of the Laws of 1874, it could maintain an action thereon against the city. People ex rel Tenth National Bank v. Board of Apportionment 64 N. Y., 627.
There is nothing left in the case, therefore, requiring consideration, except the single question of the good faith of the defendant in making the advances, and on that subject the facts appearing in evidence may be summarized as follows:
By chapter 382 of the Laws of 1870, the mayor of the city of New York was authorized to appoint commissioners of the county court house, in whom should be vested tae powers which the board of supervisors then had respecting the completion of the building. In December, 1870, Ingersoll, Walsh, Co-man and Norton were appointed such commissioners. They met together, organized, and Norton was selected to be president and Ingersoll treasurer of the commission. At that time there were various claims existing against the board of supervisors in the court house account, and under an act passed by the legislature in 1871, an appropriation had been made of $750,000, which, on certain limitations, was to be paid over in the proceeds of bonds to the commissioners to enable them to finish the structure. The "commissioners applied to the comptroller to issue bonds under the act last referred to, but he either refused or neglected to do so, and they, desiring to continue operations, to pay outstanding indebtedness and. to provide means to finish the building, determined to borrow money temporarily for the purposes indicated. Ingersoll, as treasurer of the commission, opened negotiations with Hr. Bliss, the defendant’s president, stating that he would bring to the bank the account of the commission, and asking that the bank make advances “as it did to the city departments.” Bliss testifies that “ the substance of it was to allow them (the commissioners) after they had opened an account, to draw their checks upon us to make the payments they required to make, and we to charge it to their account when the checks came to us through the clearing house or otherwise.” This was nothing more or less than an agreement for loans or advances, and the subsequent dealings were in pursuance of the arrangement. After talking with Ingersoll, Bliss saw the comptrol.er of the city of New York, who informed him that it would be safe to make advances to the commission, and he also had an interview with the mayor, who made a similar statement. When advances had been made to the extent of about $215,000, the comptroller paid to the bank on account of the court house commissioners the sum of $200,000, which wa„ all the money ever deposited to their credit in the bank. Afterwards further advances were made, swelling the aggregate of advances over deposits to the sum of $242,579.97.
All the transactions with the bank respecting the advances of money were had between Ingersoll, as treasurer of the commission, and Bliss, as president *278 of the bank. It is not proven that any officer or director of the bank, other than Bliss, acted for the bank in making either the original arrangement or any one of the twenty-two separate items of advances which were made. Each item advanced was entered in a book, and the directors of the bank had that book before them at their meetings, which were always held after the advances had actually been made. In other words, each transaction was completed and the money actually paid out by the bank before the directors v ere notified of it.
There is nothing whatever in the evidence to show that any director of the bank participated in the transactions, or any one of them, as its agent, nor does it appear that the subject of any one or of all of the advances was ever considered by the directors, unless it may have been to ratify or approve formally the acts of the president after they had been performed.
It is proven incontestibly that of the money advanced to the commissioners by the bank a certain proportion was stolen by Ingersoll, and that a conspiracy existed between him, Tweed and Connolly, by which they presented false claims against the city and county, and that some of the bills to pay which the defendant advanced part of the $242,579.97 were among such false claims.
The method resorted to was to increase some of the legitimate charges against the city or county by about forty per cent, and that increase was distributed among Connolly, Tweed, Watson, Ingersoll and others. Ingersoll, Tweed and Connolly were directors of the Tenth National Bank, and it is now contended that the bank cannot recover on its counterclaim because of the fraud of Ingersoll and the other directors named perpetrated upon the city or county, and the contention is made in two forms—first, that the advances were not made in good faith, because there was a conspiracy in which certain individuals, who were, also, directors of the bank, were engaged to rob the city, and certain of the moneys advanced were stolen by such individuals; and, second, that the advances w. re not made in good faith, because the bank is chargeable with the knowledge Ingersoll, Tweed and Connolly had of the fraudulent character of some of the bills to pay which the bank advanced moneys.
All of the bills paid by the commissioners of the county court house from the advances of the defendants were audited by the commissioners, and neither of the associates of Ingersoll on the commission knew of his turpitude. Mr. Bliss, the president of the bank, was also ignorant of the fraud, and there is not a syllable of evidence showing any participation in the fraudulent scheme of any person connected with’ the bank, other than the directors named, who shared in the theft.
It is frankly conceded by the counsel for the city that, “we must assume that in making the advances, Mr. Bliss, the active manager of the bank, was innocent of intentional wrong,and equally innocent of the fraudulent character of the disposition to be made of the moneys, and supposed, erroneously, it is true, that it was legal for him to make the advance.” The good faith of the officer of the bank who alone represented it, is, therefore, conceded, and indeed, on the evidence it cannot be doubted.
An analysis of the twenty-two separate transactions clearly shows that as to some of them there was no fraud at all, and the bills that are not tainted are readily distinguished from those that are. Of the $242,579, it is clear that $130,000 of accounts, namely, the pay rolls and two other accounts mentioned by Ingersoll, were not fraudulently tampered with. The balance, or about $112,500, was of bills affected; that is to say, $67,000 (about) represented honest demands, and $45,000 the fraudulent excess; the latter being the amount stolen from the city. There is ground for holding that the transactions being separable and the honest bills being ascertainable, the defendant could recover the moneys advanced to pay them, but the objection interposed goes to the whole counterclaim, and it should be considered as presented. It is urged that "the advances were made in pursuance of a fraudulent conspiracy, by reason of which a portion of the money was diverted from its purpose and afterwards divided among city officials, and that therefore the whole s: ries of transactions is so contaminated by the conspiracy that, even as to that part of the money which inured to the benefit of the city, it does not create a claim *279 ■on the part of the bank against the city.” I have stated the contention in the ■exact words of counsel.
The difficulty with the proposition is, that it is not based on premises found in the evidence so far as the ; ank is concerned. All that appears is, that certain persons holding office' under the city or county, and who were at the same times directors in the bank, conspired to cheat the city, and did cheat it in some of the transactions in which the bank advanced money. Their guilty knowledge and purpose was not disclosed to, nor suspected by, the only officer ■of the bank who represented it in the business. His integrity is not impeached; the moneys of the bank, so faras he was concerned, were actually advanced by him in good faith, and there is no ground, therefore, for the allegation of an actual conspiracy between any person acting for the bank and those who were engaged in plundering the city. The in ention of counsel was, nevertheless, to raise this question, viz : Is the bank chargeaule with the knowledge of the guilty directors; is that knowledge imputable to it, and is it thereby debarred from recovering ?
A corporation, when chargeable with the knowledge of its officer or agent, is made so on the theory of agency. Courts have been called upon frequently to define the rule of notice to corporations of facts within the knowledge of their officers or directors, and there is some conflict in the authorities ; but in the state of New York there is a continuous current of judicial decision to the effect that the knowledge of a director or officer of a bank of facts affecting the equities of its transactions is imputable to the corporation as notice when the director or officer is acting for the bank in the transaction as its representative. No case is to be found in New York, so far as 1 have been able to discover, in which the bank has been held bound by the knowledge of its director when such director did not in any way act or represent the bank. A consideration of some of the New York cases in which the question has arisen will illustrate the application of the rule. It was before the supreme court in The Bank of the United States v. Davis, 2 Hill, 451. There it appeared that certain bills of exchange had been sent by Davis, the drawer, to Williams, a director of the bank, for the purpose of having them discounted for Davis’ benefit. Williams endorsed them, had them discounted by the bank for his own account, and appropriated the proceeds to his own use. He was one of five directors who passed upon the paper when it was offered for discount. The point was, “whether or not the bank is chargeable with notice of the fraudulent conduct of their director while thus acting in the transaction of their business as one of the members of the board.” It was held that the bank was ■chargeable because Williams acted in his official capacity on behalf of the bank in granting the discount. The ground was taken that Williams should not be taken as acting in behalf of the bank, but for himself, while engaged in the perpetration of the fraud.
The opinion of the court, delivered by Nelson, Ch. J., contains the following observations: “I agree that notice to a director or knowledge derived by him while not engaged officially in the business of the bank, cannot and should not operate to the prejudice of the latter. That is clear from the ground and reason upon which the doctrine of notice to the principal through the agent rests. The principal is chargeable with this knowledge, for the reason that the agent is substituted in his place and represents him in the particular transaction; and as this relation, strictly speaking, exists only while the agent i j acting in the business thus delegated to him, it is proper to thus limit it to such occasions. But in this case, as has been already observed, Williams was a member of the board participating at the time in the discounting of bills and notes as one of the directors of the bank, and as such procured the discount of the paper in question avowedly for his own benefit, but knowing at the time that it belonged to Davis, one of the defendants. So far, therefore, as he may be regarded as representing the bank in transacting its business at the board, the institution must be considered as having knowledge of the fraudulent diversion of the bills from the object for which they were drawn. To this extent, his acts and knowledge concerning the object and ownership of the paper are to be deemed the acts and knowledge of the institution itself.”
In The President, etc., of Westfield Bank v. Cornen (37 N. Y., 320) the question was as to ilie plaintiff bank being chargeable with the knowledge of one .Jessup, a director, that a note discounted by the bank had been made without *280 authority by an attorney in fact of the defendant. The court held that such knowledge was not notice to the bank, and said: “It must be remembered that Jessup, although a director oí the plaintiff bank, was not acting as such in the discounting of the note.” “ He was no agent of the bank in this transaction, and the rule that notice to an agent is notice to the principal does not apply.”
The subject was again considered by the court of appeals in Holden v. N. Y. and Erie Bank et al. (72 N. Y., 291). In that case Ganson committed certain acts of fraud upon persons for whom he was trustee. In furtherance of those acts, he being president of a bank, did certain things in his official capacity. The court held the bank bound by the knowledge he possessed, saying, “ the subject-matter of his agency was the conduct and direction of the affairs- of this bank; he represented the bank in all these transactions. * * * Notice to him while so engaged, though not otherwise received than by possession of knowledge acquired by him while acting in another capacity, was notice to' the bank." .
In Atlantic State B’k v. Savery (82 N. Y., 293), one Law fraudulently indorsed a note in the name of a co-partnership of which he was a member, and used it for his individual benefit, transferring it to a firm of brokers with whom he had private dealings, and vho knew he was using the firm name and credit in a matter having no relation to the partnership business.
The brokers endorsed the note for value to the plaintiff bank, its president acting for it in the transaction. One of these brokers was a director of the bank' and it was claimed that the bank was affected by its director’s knowledge. On this point the court said: “ In behalf of the bank he did no act concerning the note or its purchase. The title to the note was perfect in the bank when its president perfected the bargain; ” and it was held that the director’s knowledge could not operate to the prejudice of the bank.
So it was stated in Craigie v. Hadley (99 N. Y., 131), where the question came up in another form, that notice to an agent of a bank or other corporation is notice to the corporation in transactions conducted by such agent acting for the corporation.
In each of these cases in which the corporation was held bound, the fact was-present that the officer or director, whose knowledge was held to bind the corporation, acted in behalf of the corporation. That fact is really made the test. There are many other cases to the same effect as those above referred to, but I do not deem it necessary to advert to them. They may be found in the note to the charge of Mr. Justice Matthews in Waynesville National Bank v. Irons (8 Fed. Rep., 1), and in the note to Bank of Pittsburgh v. Whitehead, 36 Am. Dec., 186.
Adopting as the rule of decision in this case the principle laid down in the authorities above cited, we find that neither Tweed nor Connolly, is in any way, even in the most remote manner, connected with the agreement or arrangement made between Bliss, the president of the bank, and Ingersoll, or with the act of the bank in making the advances. It is not proven even ihat either of the persons named attended a meeting of the board of directors during the whole period of time covered by the advances. They therefore need nofurtlier consideration. As to Ingersoll, he did not in the transaction act for the bank. On the contrary, he acted for andas the agent of the court house commissioners. As their agent he borowed the money. He did not pass upon and was not called on to determine whether or not the bank should open the account and advance the money. He negotiated the business as one party to a transaction in which the bank was the other party. He is to be regared as one dealing at arm’s length with the bank. City Bank of New York v. Barnard et al., 1 Hall, 70.
There must be judgment for the defendant on the counter-claim, less the amount due the plaintiff on the cause of action set forth in the complaint, with taxable costs only. The city was justified in testing the question of the good faith of the bank in making the advances, and therefore, this is not, in my judgment, a proper case for an extra allowance. It is to be regretted that so-long a delay has occurred in bringing the issue to trial that the interest account has largely augmented the debt.
In adopting the views of the appellate branch of the court as to the interpretation of the acts of 1872, I have followed the settled law of this case, so far as. *281 this court is concerned The defendant’s claim, if the full calculation of interest were allowed, would be $490,193.25, but the city, by the computation agreed upon, virtually receives in addition to the $66,301.36, the benefit of interest on its claim, equal in amount to $65,079.87, and thus the recovery of the defendant is reduced to $358,849.23.